was abolished in good faith and the duties of the position created were similar to the position abolished, he was entitled to a transfer to such position. The new appointee is performing one part of the duties heretofore performed by the petitioner, as appears by the affidavit of the superintendent, and the balance of the duties which fall to the position are being performed by "others." It has been determined by the courts that a position can be abolished in good faith in order to secure more efficiency, even where the position is held by a veteran.

[2] It is claimed on the part of the superintendent that the petitioner does not controvert the fact that the position was abolished in good faith, and that for that reason no writ of mandamus should be granted.

I understand from the papers that the question of good faith is the very issue here. The facts are set forth by the petitioner in detail, including notices served by the petitioner showing that he was an exempt fireman, and the petitioner claims that what was done by the superintendent of public buildings was done in bad faith, or at least that it is a fair conclusion or inference to be drawn that what was done was done in bad faith. As to whether it was done in good faith, or in bad faith, is the question to be determined.

There seems also to be some question as to the power of the superintendent to abolish the position held by the petitioner, excepting pursuant to the approval of the trustees of public buildings.

However that may be, the real question is whether what was done by the superintendent of public buildings in connection with the abolishment of the position of paymaster, and the consequent removal of the petitioner was done in the best interests of the state, and in accordance with the provisions of the law which is intended to protect those who are similarly situated with the petitioner here. On the one side it is claimed that it was for the betterment of the service that the superintendent might have some one upon whom he might confidently rely as private secretary, and, upon the other hand, it is claimed that it was the means of securing or accomplishing the appointment of one person in place of another, was not in good faith, and was in violation of the law. All of the facts relating to the particular work devolving upon the paymaster and the storekeeper and the private secretary should be ascertained in order that the question of good or bad faith can be legally determined.

An order may be entered granting an alternative writ of mandamus.

---

MacRAE v. CHELSEA FIBRE MILLS.

(Supreme Court, Appellate Division, Second Department.   June 16, 1911.)

1. EVIDENCE (§ 67*)—PRESUMPTION—CONTINUANCE OF EXISTING FACT.
    Where lights were shown to have been burning in the morning, and it was shown that they were not burning in the afternoon, the presumption of continuance of existing conditions applied to their burning

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the morning, and did not relate back from the time they were shown to have been out.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. § 67.*]

2. NEGLIGENCE (§ 1*)—"ACTIONABLE NEGLIGENCE."

Actionable negligence is predicated on what reasonably prudent men would or should have been able to anticipate from a view of the situation before the accident.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 1, pp. 148, 149; vol. 8, p. 7563.]

3. MASTER AND SERVANT (§ 107*)—SAFE PLACES—NEGLIGENCE OF MASTER.

A master was not negligent in leaving an unused gas jet extending from the wall in a room ordinarily lighted by electric lights, which room was not used as a workroom, but was used for valves and pipes of a foundry with incidental use as a stock room, and on a servant's going to the room and finding an electric light out, and being injured by bringing his eye in collision with the jet, the master was not liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

Hirschberg, J., dissenting.

Appeal from Trial Term, Kings County.

Action by William MacRae, an infant, by Charles C. MacRae, guardian ad litem, against the Chelsea Fibre Mills. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

E. Clyde Sherwood, for appellant.
Hugo Hirsch, for respondent.

WOODWARD, J. In the case at bar the plaintiff, a boy of 17 or 18 years of age at the time of the accident, was employed as a pipe fitter or steam fitter's assistant in the defendant's factory. He had been employed there for about three years, and was conversant with every part of the factory. On the day of the accident he was sent from a place in the defendant's cellar to what was known as the "steam room," apparently from the evidence upon the same level, for the purpose of securing some of the asbestos covering used in the work of fitting the steam pipes. As he opened the door of the steam room, he found that the lights, which had been burning in the morning when he was there, had been extinguished, and that the room was dark—so dark that he could not see anything in the room. He knew that there was a box inside the room which was necessary to something connected with the steam plant, and he passed to the left of the location of this box, and, while groping around in the darkness looking for the asbestos, the general location of which was known to him, he came into collision with a gas jet projecting from the side of the building, and one of his eyes was more or less seriously injured. While the evidence does not clearly disclose the fact, it is probably the case that the gas jet was put in originally for the purpose of lighting this dark room, and that subsequently the place was

equipped with four electric lights and the use of the gas abandoned, though it does not appear that the gas had been shut off, or that it was entirely out of use. The room was not used for a workroom. It was apparently devoted to the valves and pipings of the factory, with an incidental use as a stock room for the materials used in connection with the piping, where the plaintiff was called upon to go two or three times a day. While there is some testimony on the part of one of plaintiff's witnesses to the effect that the four electric lights maintained by the defendant in this steamroom were out of order two days or more before the accident, and that the matter had been called to the attention of the defendant's chief engineer, who had agreed to repair the same, the plaintiff himself testifies that the lights were burning on the morning of the accident, and the accident occurred at 2 o'clock in the afternoon. The plaintiff's witness testified that he tried to turn on the electric light nearest the door where the plaintiff entered after the accident happened, and that it did not produce a light, but he does not appear to have made any further effort to test the lights in the room, and the plaintiff's testimony that they were burning in the morning of that day, which is wholly undisputed, shows conclusively that, if there was any defect in the lights, it must have developed at a time subsequent to the plaintiff's visit to the steam room during the morning of the same day, and for all that appears in the testimony the electric light which the plaintiff's witness attempted to turn on immediately after the accident may have developed the defect at the very moment that the plaintiff opened the door of the steam room, or, at any rate, between his visit in the morning and the moment of the accident.

[1] Of course, if it had been shown that the lights were out of commission two days before, the presumption might be indulged that this condition had remained, for the witness testified that the room was dark when he opened the door, but the plaintiff himself says that they were burning at the time of his visit in the morning, so that the presumption is that they continued to burn until the contrary is shown, for the general rule is well recognized that, where the existence at one time of a certain condition or state of things of a continuing nature is shown, the general presumption arises that such condition or state continues to exist, until the contrary is shown either by circumstantial or direct evidence, so long as is usual with conditions or things of the particular nature. 22 Am. & Eng. Ency. of Law, 1238; Matter of Huss, 126 N. Y. 537, 542, 27 N. E. 784, 12 L. R. A. 620, and authority there cited; 16 Cyc. 1052. Here the evidence was that the lights were usually on from the time the work commenced in the morning until it closed at night, and, when the plaintiff himself testified that they were burning in the morning, the fair presumption is that they continued to burn until the time the evidence showed they were not burning, and there was no interval of time in which the defendant could have had notice of the alleged failure to properly light this room. How, then, is a jury to say that the defendant was negligent in respect to lighting this room? It had provided the lights, the machinery for operating them, and they were actually lighted in the morning of the very day of the accident, and presumptively so

until about 2 o'clock in the afternoon, at which time the plaintiff opened the room and found them out. The presumption as to the continuance of a condition or state of facts once shown to have existed does not run backwards, and the law never raises from the proof of the existence of a present condition or state of facts any presumption that the same condition or facts existed at a prior date (22 Am. & Eng. Ency. of Law, 1239), so that we cannot move backward from the discovery that the lights were out, and presume that they had been out a length of time which called upon the defendant to act, assuming that a matter of a few hours would be sufficient time.

But upon the broader question of the negligence of the defendant in leaving the gas jet after installing the electric lights. Was there any duty on the part of the defendant to anticipate that the electric lights would fail to operate at the particular time that the plaintiff or some one else would happen to be in this particular room, and that with all of the open space that this plaintiff or other person would grope around in the darkness and come into contact with this particular gas jet? There is no evidence that the gas jet was negligently placed, that it extended an unreasonable distance from the wall, or that there was anything about it materially different from thousands of other gas jets in similar places. All that the evidence discloses is that the plaintiff went into this room, which the defendant usually kept lighted, knowing that it was dark, and that he came into contact with a gas jet, and the jury has found that the defendant was negligent in permitting this gas jet to be there without the room being lighted, on the theory that the defendant had failed to provide that reasonably safe place in which the plaintiff was to perform his labors which the law requires, which is practically equivalent to holding the defendant liable as insurer of its employés, for clearly no man of ordinary prudence, looking at this room prior to the accident, would think of this conjunction of circumstances as likely to happen. Here is a little used room, 20 by 30 feet in size, supplied with four electric lights, any two or three of which, if unobstructed, would disclose objects in the room sufficiently to reasonably protect those who had any occasion to be there. There is a proper equipment to operate these lights, and at the side of the room there is a gas jet projecting to some extent from the wall. There is a box immediately in front of the door, some few feet away, used to reach a valve in the piping of the factory, and, so far as the evidence goes, no other obstruction. There is no suggestion that there is not plenty of room to pass around this box on either side without coming in contact with this gas jet, and to anticipate any danger from this situation, in so far as the gas jet is concerned, we must contemplate not only that all of these lights may be extinguished, but that some person, knowing the surroundings and finding the lights out, will go into the darkness, pass over to the extreme side of the room, and reach this gas jet. Of course, we can see now that, if the gas jet had been taken down, this particular accident would not have occurred, but "a wisdom born after the event," to quote the language of Mr. Justice Brewer in United States v. Bell Telephone Company, 167 U. S. 224, 261, 17 Sup. Ct. 809, 818, 42

L. Ed. 144, "is the cheapest of all wisdom. Anybody could have discovered America after 1492."

[2] Actionable negligence is predicated upon what reasonably prudent men would or should have been able to anticipate from a view of the situation before the accident, and it would be most remarkable if one man in a thousand, looking into this room with all of the equipment furnished by the defendant, would have it suggested to his mind that any injury was likely to occur to an employé by reason of the presence of this gas jet. It is not extraordinary care that the master is bound to exercise. The law is satisfied when reasonable care is shown; and if the plaintiff was in the exercise of reasonable care in entering this dark room, with which he was familiar, though he says he did not think of the gas jet at the time, it can hardly be said that the defendant was guilty of negligence in having an ordinary equipment in such room.

[3] This was not the case of a master placing an obstruction in a dark passageway unknown to the servant, but simply leaving a once useful part of the equipment where it had been to the knowledge of the plaintiff for a long time. It would clearly not have been negligent in the defendant to have a peg or nail in the wall to hang a lantern upon, or for any other useful purpose, and yet the same accident might have happened if this had been the equipment instead of the gas jet, and we are clearly of the opinion that the law of negligence has not yet reached the point where the master may not make use of the ordinary equipment of the interior of a room used in the practical operation of his factory without being liable for every accident which may in the infinitude of possibilities result. We do not think the plaintiff was guilty of contributory negligence in going into this dark room, because, knowing the surroundings as he did, there was no particular danger to be apprehended, and we are equally clear that the defendant was not guilty of actionable negligence, because it had no reason to anticipate that any one would be in the room in the darkness for any other purpose than to turn on the lights, and this could have been done without going near the walls, for the lights were suspended in the middle of the room, which was at least 20 feet in width. There was no danger concededly with the lights in operation, and the fact that they were not burning at the time of the accident was known, so far as appears from the evidence, to the plaintiff alone. He might have gone in there a thousand times upon this same errand and never come in contact with this gas jet, and the mere fact that upon this particular occasion he was unfortunate is not sufficient to charge the defendant with liability.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., and BURR and RICH, JJ., concur. HIRSCHBERG, J., dissents.