KINGS COUNTY TRUST COMPANY, as Executor of HENRY
HYAMS, Deceased, Respondent, *v.* SOPHIE HYAMS,
Appellant.

Evidence — trial — personal transaction between witness and
decedent — purpose of section 347 of Civil Practice Act —
opening door for testimony explaining transaction with dece-
dent — erroneous exclusion, on redirect, of testimony as to
circumstances under which witness received check, where her
acts in relation thereto had been brought out on cross-exami-
nation — error to exclude testimony as to circumstances under
which she received paper proved to be in defendant's hand-
writing and offered in evidence on behalf of executor — errone-
ous exclusion, on redirect, of testimony as to mental condition
of deceased where, on cross-examination, witness had been
questioned at length as to his physical condition.

1. The purpose of section 347 of the Civil Practice Act is not only
to exclude direct testimony of conversations and transactions, but
all such facts and circumstances as have such a relation to, or bear so
closely upon personal transactions, that a reasonable inference of such
transactions can be drawn from them, but where counsel for an
executor has sought to draw from testimony of an interested witness
inferences or corroboration of his theory as to a personal transaction
of the witness with deceased, the door is opened for her explanation
and testimony in regard thereto.

2. Where, in an action by an executor to recover from the widow
of testator the amount of a check which it is alleged she forged and
wrongfully cashed, she is called as a witness on her own behalf and,
on cross-examination, counsel for plaintiff made the witness his own
upon new matter with the result that he proved by her, acts which, it
was claimed, fitted in completely with plaintiff's case that testator
did not give her the check on the day she claimed to have received
it but had authorized her to make one to pay a small bill about one
month before, it was error, on redirect, to exclude her answer to a
question by her counsel as to the circumstances under which she
received the check.

3. It was also error to exclude her testimony as to the circumstances
under which she received a paper stating a personal communication
and transaction between the witness and deceased, where the plaintiff
had proved that it was in the defendant's handwriting and had offered

it in evidence. She should also have been permitted, on redirect, to testify as to the mental condition of deceased, where his health was a matter of importance in the case, and, on cross-examination, she had been questioned about his physical condition during three months or more prior to his death.

*Kings County Trust Co.* v. *Hyams*, 214 App. Div. 730, reversed.

(Argued April 7, 1926; decided May 4, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 21, 1925, affirming a judgment in favor of plaintiff entered upon a verdict.

*Theodore Kiendl* and *Otis T. Bradley* for appellant. The court's refusal to permit defendant to testify as to the condition of the deceased is substantial error demanding a new trial and a reversal of the judgment in favor of plaintiff herein. (*Hackstaff* v. *Hackstaff*, 82 Hun, 16; *Griswold* v. *Hart*, 205 N. Y. 384; *Matter of Kelly*, 238 N. Y. 71; *Rouse* v. *Whited*, 25 N. Y. 170; *Nay* v. *Curley*, 113 N. Y. 575; *Matter of Cozine*, 104 App. Div. 182; *Blankman* v. *McQueen*, 13 N. Y. Supp. 663; *Riegle* v. *Bratt*, 78 Hun, 532; *Patnode* v. *Foote*, 153 App. Div. 494.) The disqualification of defendant from testifying as to what was said by the deceased at the time of the receipt by defendant of check No. 1067, the check in suit, is substantial error demanding a new trial and a reversal of the judgment in favor of plaintiff herein. (*Merritt* v. *Campbell*, 79 N. Y. 625; *Nay* v. *Curley*, 113 N. Y. 575; *Koehler* v. *Adler*, 91 N. Y. 657; *Hopkins* v. *Clark*, 90 Hun, 4; *Mills* v. *Davis*, 113 N. Y. 243; *Boyd* v. *Boyd*, 164 N. Y. 234; *Faurie* v. *Lazelle*, 205 N. Y. 526.)

*Allan S. Wrenn* and *George E. Brower* for respondent. The trial court properly excluded testimony by defendant as to whether decedent's mind was or was not clear. (*People* v. *Buchanan*, 145 N. Y. 1; *Martin* v. *Hillen*, 142 N. Y. 140; *Rogers* v. *Rogers*, 153 N. Y. 343; *People* v.

*Pekarz,* 185 N. Y. 470.)    The cross-examination of defendant did not open the door for redirect as to alleged conversations between defendant and decedent regarding check No. 1067, and the ruling of the trial court was correct.    (*Burdick* v. *Burdick,* 180 N. Y. 261; *Nay* v. *Curley,* 113 N. Y. 575; *Martin* v. *Hillen,* 142 N. Y. 140; *Rogers* v. *Rogers,* 153 N. Y. 343; *Lawyer* v. *White,* 198 N. Y. 318; *McCarthy* v. *Woolston,* 210 App. Div. 152; *Matter of Knibbs,* 108 App. Div. 134; *Matter of Woodward,* 69 App. Div. 286; *Ahrens* v. *Moadinger,* 41 App. Div. 355; *Savercool* v. *Wilsey,* 5 App. Div. 562; *Dana* v. *Wright,* 23 Hun, 29.)

CRANE, J.    Henry Hyams died in the borough of Brooklyn on the 28th day of November, 1921, leaving a last will and testament, wherein the plaintiff in this case was appointed his executor.    The testator left him surviving his widow, Sophie Hyams, and three sons by a former marriage, Henry Hyams, Jr., Benjamin Hyams, and Samuel Hyams, as his only heirs at law.    The will, made and executed the 15th day of January, 1919, bequeathed to his wife the sum of $25,000 to be held in trust to pay the net income thereof to her during her natural life; the income of $10,000 was payable to his son Benjamin Hyams; $20,000 was bequeathed to Samuel Hyams, and all the residue was given to his son Henry Hyams.

This action has been brought to recover the sum of $10,000, the amount of a check which it is alleged the defendant forged and wrongfully cashed.    The complaint alleges that on the 20th day of November, 1921, the defendant had in her possession a check signed by the deceased, Henry Hyams, in blank, drawn on the Kings County Trust Company; that the defendant inserted her name as payee and the amount $10,000 without the knowledge or authority of the said Henry Hyams, and fraudulently converted the same to her own use.

Under a general denial, the case came on for trial, and resulted in a closely contested issue, with much evidence bearing upon the defendant's fraud, or else her authority to have and keep the money. That the deceased signed the check was conceded; his signature was genuine. It was dated November 20, 1921, and Hyams died November 28, 1921. There is no question that the defendant filled in the rest of the check, dated it, and deposited it in her own account. It was the defendant's contention that this check and money were given to her by her husband to erect or to complete the construction of a house upon property which she owned at Manhattan Beach. On August 31, 1921, or about three months before the death of her husband, Mrs. Hyams had purchased some property at Manhattan Beach, title to which was taken in her own name. At the time she bought the property her husband was with her. For this property she paid $3,375. As to these facts there is also no dispute. There was much evidence given by disinterested witnesses, and by friends of Mr. Hyams, that he had given to his wife, the defendant, $10,000, or a check for $10,000, to enable her to build a house, or for the purpose of completing a house on this property which she had purchased. There is evidence that he had consulted a builder or architect as to the cost of construction.

The plaintiff's claim was that this check had been procured not at the time of its date, November 20, but in the middle or latter part of October; that the defendant had obtained it from her husband with the avowed purpose of paying a doctor's bill — Dr. MacGilligan's — for $125; that having obtained possession of a signed blank check for this avowed purpose, she did not pay Dr. MacGilligan, but filled the check in later on the date of November 20 for $10,000, payable to herself, without the knowledge or consent of her husband.

Now this was the issue. Did the defendant make this

check payable to herself at her husband's direction, or did she do it without his consent, by means of the subterfuge of procuring a check for Dr. MacGilligan?

A jury found for the plaintiff, and the judgment in its favor has been affirmed by a divided court.

The defendant has appealed to us to review exceptions taken to the exclusion of evidence, which she claims were prejudicial errors affecting her case with the jury. Being an interested witness prohibited from testifying under section 347 of the Civil Practice Act, as to the transaction in question, she was, however, cross-examined by the plaintiff's lawyer to such an extent that her counsel insists that the door was opened for her explanations and testimony. The plaintiff, it is claimed, has sought to draw from her testimony brought out on cross-examination, certain inferences or corroboration which she has been prevented from rebutting. As we are inclined to take this view of the case, let me state the reasons.

Check No. 1067 is the one in dispute. The date is November 20, 1921. Check No. 1066 is dated October 10, 1921. Check No. 1068 is dated October 28, 1921. As Henry Hyams signed these three checks, it is reasonable to suppose that he signed No. 1067 between October 10 and October 28. As No. 1067 has the date November 20, 1921, it must have been dated after October 28. The stub of check No. 1067 is blank; all the other stubs apparently are filled in to correspond with the checks. The check, therefore, No. 1067 to the plaintiff's order for $10,000 has no corresponding stub entry; it is a blank. There is also no check or stub of a check drawn to the order of Dr. MacGilligan for $125. So far as the stub of the check book shows, check No. 1067 could have been drawn to either Dr. MacGilligan or the plaintiff. Upon the face of the check book there is this rather strange or unusual circumstance. If it be true, as testified by witnesses for the plaintiff, that in the latter

part of October Sophie Hyams asked her husband to sign a blank check to pay Dr. MacGilligan, the check which she got must have been No. 1067, if it were taken from the Kings County Trust Company check book. Here then would be a strong probability that the defendant wrongfully filled in the check to her own order.

She was called as a witness in her own behalf to deny the testimony of the stepson, Sam Hyams, that she had told him that the check had been drawn to pay Dr. MacGilligan $125. On cross-examination, counsel for the plaintiff pushed the matter much further, making the witnesses his own upon new matter, with the apparent purpose of drawing from her testimony to corroborate the plaintiff's theory and evidence that check No. 1067 was in fact drawn for this purpose, and not to give herself $10,000 for the purpose of building a house. The cross-examination is too long to quote in full, but that it calls for transactions with the deceased regarding this $10,000 check, or the presence or absence of some element of a personal nature in the transaction, which would help the plaintiff, may be gathered from the following. The witness is questioned regarding the date which she wrote on the check.

" Q. Where were you when you wrote the ' 20 '? A. 402 State Street." (This was the home of Mr. and Mrs. Hyams.)

" Q. When did this check come first into your possession? When? A. Some time in the latter part of October.

" Q. Did you tear this check from its stub? A. No.

" Q. When did this check come into your personal custody? The date is what I want. A. I can't just tell you exactly to the date. I know it was some time in the latter part of October.

" Q. Now, he wants to know if you had possession of it right along, until you wrote ' 20 ' in it? A. Yes, sir.

" Q. Where did you keep it? A. In the check book.

" Q. In its place, attached to the stub?   A. No, not attached to the stub.

" Q. After this check came into your custody, did you fold it?   A. No; I laid it in the book.   My husband gave it to me, and I put it in the book.

" Q. When did you write the date now on this check, ' Sophie Hyams, ten thousand? '   A. On the 20th.

" Q. I mean — now, understand — just before you wrote ' Sophie Hyams, 10,000, ten thousand,' you took the check out of the check book, where it had been all the time since the middle of October; is that right? Since the latter part of October; is that right?   A. Yes, sir.

" Q. Well, was it the 20th of November that you detached the check from the stub?   A. I told you I never detached the check."

The witness was then questioned regarding the writing, who did the writing on checks 1070 and 1071, and other moneys that she received from her husband on the 15th of September, 1921.   The plaintiff, therefore, proved by the widow that this check came into her possession in her home in October; that she did not detach it from the check book; that she wrote the words " Sophie Hyams, ten thousand " in the check on the 20th day of November, 1921; from all of which it can be claimed, and was, that such acts fitted in completely with the plaintiff's case; that Hyams did not give her the check to build a house, but authorized her in October to make the check for Dr. MacGilligan's bill of $125.

When, therefore, on redirect, the witness was asked by her counsel the circumstances under which she received the check, we think it was error to exclude her answer. If Sophie Hyams has been called to testify regarding all these facts in her own behalf in an action on the check, we think that the testimony would have been incompetent under section 347 of the Civil Practice Act.   The purpose of this section not only excludes direct testimony

of conversations and transactions, but all such facts and circumstances as have such a relation to, or bears so closely upon personal transactions, that a reasonable inference of such transactions can be drawn from them.

" If, in substance, the fact sought to be elicited respects a personal transaction and tends directly to disclose a personal transaction, or the presence or absence of some element in a personal transaction, then the fact is not, we think, an independent one, and the survivor is precluded from testifying to it, unless the way is opened by his examination by the other party." (*Nay* v. *Curley*, 113 N. Y. 575, 582; *Hoag* v. *Wright*, 174 N. Y. 36; *Koehler* v. *Adler*, 91 N. Y. 657; *Richardson* v. *Emmett*, 170 N. Y. 412; *Rouse* v. *Whited*, 25 N. Y. 170, 174.)

There are two other rulings which may also be considered. The plaintiff offered in evidence a paper marked " Exhibit 11," written by Sophie Hyams, and apparently signed by Henry Hyams. It is dated November 16, 1921, and reads in part: " My husband  * * *  authorized me to write his last will and testament taking 50 per cent of his intire request for love and affaction as his true and loving wife," etc. On cross-examination Sophie Hyams was questioned about this paper which the plaintiff had offered in evidence. On redirect, the defendant was asked the circumstances under which she received that paper, and this was excluded. We think this was also error. The plaintiff had proved that it was in the defendant's handwriting, and had offered it in evidence. This paper stated a personal communication and transaction by the witness with the deceased, and there is no reason why she should not have given all of it.

And, lastly, Henry Hyams' health was brought out upon cross-examination of Mrs. Hyams. She was questioned about his physical condition right down to the day of his death, from the summer of 1921 to November 28 of the same year. His health was a matter of importance in

this case, for it is the claim of the plaintiff that the deceased was in a state of coma from the 20th until the 28th, while the defendant's witnesses state that he was conscious and able to transact his affairs up to within two days of his death. When, therefore, on redirect, Mrs. Hyams was questioned as to the mental condition of Mr. Hyams, we think the testimony should have been admitted. The question asked by the defendant's counsel was improper in form, and if this were the only error in the case, we would not consider it substantial. We think, however, that the objection went more to the competency of the witness than to the form of the question. If the question had been properly framed to comply with our somewhat technical rules of evidence, the subject-matter asked about would have been competent and relevant.

For the reasons herein stated, the judgments should be reversed and a new trial granted, costs to abide the event.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN and LEHMAN, JJ., concur; ANDREWS, J., not voting.

Judgments reversed, etc.