MELVINA TROMBLY and Another, as Administrators, etc., of WALLACE PELKEY, Deceased, Appellants, *v.* HARVEY DESO, Respondent.

Third Department, March 17, 1932.

*Boire & Kehoe* [*Harry P. Kehoe* of counsel], for the appellants.

*George B. Hurley* [*Patrick J. Tierney* of counsel], for the respondent.

MCNAMEE, J. On August 21, 1930, plaintiffs' intestate and the defendant were riding in an automobile on the highway leading south from and near the village of Champlain. The defendant was driving his own car, and intestate was a guest passenger. These young men, with a third named Murray, had gone during the

afternoon from Champlain to Tourist Gardens, a tavern about a mile and a half from that village, and about 2,000 feet over the Canadian border, and there they drank ale. They returned to Champlain, and Murray left the other two, who continued on in defendant's automobile to a point south of the village where an accident occurred, and where the intestate received injuries from which he died on the following day. The negligence of the defendant driver was apparent and uncontradicted; that the intestate died as a result of the injuries was not questioned. The only issue litigated was the contributory negligence of the guest passenger. The defendant sought to make out the defense of contributory negligence by offering proof from which the jury might find that both occupants of the car were intoxicated, or that the intestate was intoxicated and accordingly unable to exercise the care required of him, or that the defendant himself was intoxicated and, therefore, the intestate was negligent in riding with him. No showing was attempted by the defendant to explain the accident or the resulting injury, except the one of intoxication. It was the evidence of intoxication, or freedom therefrom, which was the controverted and the controlling fact in the case; and upon this question the defendant offered the testimony of two witnesses, exclusive of the defendant himself, and the plaintiffs offered that of three witnesses.

The testimony of defendant's witnesses was to the effect that the intestate and defendant were at Tourist Gardens about an hour, and while there drank some ale; and that when they left they were " feeling good," were " a little unsteady," that they " were drunk." The result of the testimony of plaintiffs' witnesses, including the doctor who treated the intestate immediately after the accident, was that from a half hour before the accident until after the intestate had been treated at the doctor's office and removed to a hospital, the defendant " appeared to be sober, and that there was nothing about him to lead to the belief that he was intoxicated;" that he had evidently " drank some " because the witness could " smell it on him;" that the defendant was " perfectly all right," had " all his faculties," and " didn't stagger."

But this was not all the testimony which the jury were allowed to consider. After objections and exceptions duly interposed by counsel for the plaintiffs, the defendant was allowed to testify to personal transactions of the defendant with the deceased on the single issue in the case which was sharply litigated, viz., the contributory negligence of the intestate due to the intoxication of one or both of them. Thus the defendant was allowed to testify that he and the intestate had worked together in the same gang, were good friends, were together at the Malone Fair on the day in

question, went to Tourist Gardens together, and drank ale there; that they sat together at the same table, that the defendant drank four quart bottles and one small bottle of ale, that he saw Pelkey, the intestate, drink ale, that ale had been served to them by the proprietor and also by a waiter, and that the defendant paid for " some " of the ale which he drank; that the defendant did not walk straight, but was staggering a little. And after stating that he had drunk this large quantity of ale, in response to further questions addressed to the defendant, the record discloses the following: " Q. Did you see Pelkey drinking? * * * A. Yes, sir. Q. What did you see him drink? A. Ale. Q. How much ale did he drink? A. I don't know." The reasonable inference which the jury might have drawn from this and the earlier testimony was that Pelkey drank as much as the defendant, and probably was intoxicated, as the defendant said he himself was.

This testimony was unquestionably prohibited by section 347 of the Civil Practice Act, excluding testimony by the defendant of personal transactions had with the intestate. ( *Kings County Trust Co.* v. *Hyams*, 242 N. Y. 405, 411, 412; *Griswold* v. *Hart*, 205 id. 384, 387, 394–397; *Holcomb* v. *Holcomb*, 95 id. 316, 325–329; *Lakin* v. *Wright*, 230 App. Div. 330.) But it has been suggested that " an error in a ruling of the trial court must be disregarded if a substantial right of any party shall not thereby be affected." (Civ. Prac. Act, § 106.) But it cannot be said that the evidence in this case, with the defendant's testimony excluded, was so strongly in favor of the defendant as would justify setting aside the verdict as against the weight of evidence if it had been in favor of the plaintiffs; nor can it be said as a matter of law that the fact of intoxication was established by a fair preponderance of the evidence; at most, there was a fair question of the fact of intoxication presented for determination by the jury, and that its verdict, either for the plaintiffs or for the defendant, would have had support in the evidence. In such a case, when the illegal testimony is of such a damaging character and of such importance as to add materially to the weight of defendant's evidence, it may not be concluded that a substantial right of a party has not been affected. (*Hanrahan* v. *New York Edison Co.*, 238 N. Y. 194, 199; *Moore* v. *Rosenmond*, Id. 356, 360, 361.)

The judgment should be reversed and a new trial granted, with costs.

All concur.

Judgment and order reversed on the law and facts and new trial granted, with costs to the appellants to abide the event.