MAYME N. McMULLEN, *et al.*, v. ST. LUCIE COUNTY BANK. a Corporation.

175 So. 721.
Opinion Filed June 30, 1937.
Rehearing Denied July 31, 1937.

*D. C. Smith* and *Wideman, Wardlaw & Caldwell,* for Appellants;

*Milam, McIlvaine & Milam,* for Appellee.

TERRELL, J.—In August, 1928, F. G. McMullen, president of the St. Lucie County Bank of Fort Pierce, Florida, purchased two policies of life insurance, one for $25,000.00, and the other for $10,000.00, both with the John Hancock Mutual Life Insurance Company. Before delivery the policies were assigned to the St. Lucie County Bank.

F. G. McMullen died in October, 1933, and in July, 1934, his widow and minor children, the appellants herein, filed their bill of complaint in this cause praying that said assignments be decreed to have been for the purpose of securing certain loans rather than as absolute assignments, that an account be stated between the insured and the bank, and the proceeds of the policies found due to McMullen be paid to the Complainants as his heirs and legal representatives. A

motion to dismiss the bill of complaint was overruled, an answer was filed, testimony was taken, and on final hearing, the chancellor found the equities to be with the defendant and dismissed the bill. The instant appeal is from the final decree.

The answer denies the material allegations of the bill and alleges that the St. Lucie County Bank procured the policies to be issued for its protection, that they were delivered to the Bank direct and were never in the possession of McMullen, that the assignments were absolute and that the bank was beneficiary under the policies when they were issued.

Appellants seek to recover the proceeds of the policies on the theory that they are the heirs and legal representatives of the insured, that they were issued to McMullen in person but assigned by him to the bank after delivery for the purpose of securing certain loans, and that the said loans had been paid and discharged in full.

The appellee on the other hand contends that the policies constituted what is generally known as industrial, business, or key-man insurance, that they were procured by the bank for its protection, McMullen being the president of the bank, and the directing head of several other local corporations which were heavily indebted to the bank for loans made to them at his instance. These contentions present questions which must be resolved by a consideration of the evidence.

The evidence is not devoid of conflicts, but it shows without question that the bank procured the issuance of the policies for its protection, that they were not to be delivered to McMullen, but were to be delivered direct to the bank, there is no proof or showing that McMullen's executors were intended to be named as beneficiaries, but it is shown that the bank was named as beneficiary in the first instance

and paid all the premiums that matured to the time of Mc-Mullen's death. It is conclusively shown that the bank procured the policies to protect it against any loss it might sustain in the event of McMullen's death, he being president of the bank, and against any loss sustained in the event of failure to restore the loans which he as president of the bank had caused it to make to corporations in which he was the directing head. It is shown that McMullen died about five years after the policies were issued during the greater part of which time he was president of the bank, though he never paid any of the premiums nor claimed the insurance, nor was his estate diminished a penny by payment of the premiums. The moneys loaned McMullen's companies which the insurance was in part taken to protect were never repaid, but were a total loss to the bank. There is nothing in writing to support appellants' contention and McMullen laid no claim to the insurance during his lifetime.

It is settled law that a corporation may take out business insurance on the life of its president, its directors or other agents and employees in whom it has an insurable interest and when it does this and pays the premiums as they mature, a resulting trust arises in favor of the corporation in the proceeds of the policy which inhibits its recovery by the insured's personal estate. Wellhouse v. United Paper Company, et al., 29 Fed. (2nd) 886; Lincoln National Insurance Co. v. Scale, 62 Fed. (2nd) 582; 1 Couch on Insurance, Section 224; First-Columbus National Bank v. D. S. Pate Lumber Co., 163 Miss. 691, 141 So. 767; Wurzburg v. New York Life Insurance Co., 140 Tenn. 59, 203 S. W. 332.

These authorities and others hold that if the insurable interest existed at the time the insurance was secured, the fact that such interest is later cut off or for other reasons ceases to exist is of no consequence. The beneficiary who

continues to pay the premiums may enforce collection of the proceeds of the policy. Grigsby v. Russell, *et al.*, 222 U. S. 149, 32 Sup. Ct. 58, 56 L. Ed. 133; Murray v. Higgins Company, 300 Pa. 341, 150 Atl. 629; 2 Couch on Insurance, Section 374, page 1099.

The rule is also settled that a life insurance policy is a chose in action which may be assigned in the same manner that other instruments of like character are assigned. Moon v. Williams, 102 Fla. 214, 135 So. 555.

Appellants contend that the policies in question were treated as mortgages by the parties and were assigned by McMullen to secure a loan made for the bank. They rely on Pittman v. Milton, 69 Fla. 304, 68 So. 658, to support this contention. It is not disputed that life insurance may be treated as a mortgage, but in this case there was no proof of a debt contracted by the insured or that the policies were pledged to secure one. In the Pittman case, *supra,* it was held that an absolute assignment of the policy for security amounted to a mortgage, but in this case, the evidence fails to prove an absolute assignment or that McMullen made a debt which he purposed to secure with the insurance.

It is finally contended that some of the witnesses for the defendant, notably the witness Marvel, was disqualified to testify by reason of Section 2705, Revised General Statutes of 1920, Section 4372, Compiled General Laws of 1927, he being personally interested in the outcome and his testimony having reference to transactions and communications with the deceased.

The record discloses that the witness Marvel had at one time owned some stock in the St. Lucie County Bank, but that he had disposed of it long before this litigation was commenced. It is not charged that the stock sale was fraudulent or for the purpose of collusion, so he was not disqualified for that reason. His competency is determined

as of the date he testified and the interest which disqualified must be present, certain, and vested.

Even if Marvel had still owned his stock in the bank, he was not disqualified to testify because he was not a witness against the "executor, or administrator, heirs at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person," these being the persons and classes protected under the statute (Section 4372, Compiled General Laws of 1927, *supra*). Brawner v. Royal Indemnity Company, 246 Fed. 637; Goldschmidt v. Mutual Life Insurance Company of New York, 119 N. Y. S. 233; Lanter v. Southern States Life Insurance Company of Alabama, 114 S. C. 536, 104 S. E. 193; Savage v. Modern Woodmen of America, 84 Kan. 63, 113 Pac. 802.

In New York, where our statute affecting the qualification of witnesses to testify as to transactions between them and one deceased originated, it is held that an executor may waive such disqualification by testifying himself as to such matters or by cross-examining the opposite party as to them. Hackstaff v. Hackstaff, 31 N. Y. S. 11; *In re* Cozine, 93 N. Y. S. 557; King's County Trust Company v. Hyams, 242 N. Y. 405, 152 N. E. 129.

It follows that we find no error in the judgment of the chancellor, so it is affirmed.

Affirmed.

ELLIS, C. J., and BROWN and BUFORD, J. J., concur.