## (January 16, 1951.)

■

EDWARD J. SMALDONE et al., as Executors of MARIA F. DE VIVO, Deceased, Respondents, *v.* PASQUALE DE VIVO, Appellant.

MEMORANDUM BY THE COURT. Appeal from a judgment of the Supreme Court, Saratoga County.

Defendant Pasquale De Vivo was the husband of Maria F. De Vivo, now deceased. On October 14, 1947, there was presented to the wife's bank a draft dated four days before and purported to bear the wife's signature by an X mark witnessed by the husband and his lawyer, for $12,562.50 payable to the husband. The draft was paid. The action by the wife's executors for the recovery of this money was tried by both sides on the issue of the wife's mental competency at the time the draft was executed and resulted in a verdict for the executors. There is competent medical proof of the mental incapacity of the wife at the time in issue.

Besides this, the judicial proceedings instituted by the husband before he obtained the money are a concession on his part of continuing mental incapacity of the wife so strongly binding on him as to be conclusive, and certainly strong enough to justify a disaffirmance by the wife's executors of financial transactions between the husband and the wife to the wife's disadvantage.

On May 17, 1947, five months before he obtained the money, the husband verified a petition for the commitment of the wife to a hospital for the insane, but the order of commitment was not executed. The next month he verified

another petition (June 26, 1947) to have his wife declared mentally incompetent. This proceeding was tried September 4th, and the jury disagreed. The proceeding was discontinued by stipulation September 30th.

On October 16th, two days after the husband obtained the money from the wife's bank account, she was taken to a nursing home, and two days later the husband "consented" to the removal of his wife to a hospital for the insane. Five days later (October 25th) the husband through his attorney caused to be filed a petition and order of commitment of the wife to a hospital for the insane.

Thus for a long period before he obtained the money the husband had taken the position before a court that the wife was mentally incompetent by maintaining a proceeding based on his petition; and immediately after the money was transferred the husband consented to her commitment for mental illness and caused to be filed an order for this purpose. Only momentarily did she seem competent enough to the husband to transfer her money to him. The husband argues that the money in the wife's bank account had been given her by him. There is no competent proof in the record of this; but if there were the husband would not be at liberty to get the money back by this kind of a transaction. The court properly excluded proof of a personal transaction between deceased and the husband's lawyer, then a codefendant. The proof was offered generally and was not limited to the case of the appellant alone. Even if generally admissible it concerned itself with whether the wife signed the draft. Assuming she signed it, her executors could disaffirm for her incompetency.

Judgment affirmed, with costs.

HEFFERNAN, J. (dissenting). Defendant appeals from a judgment of the Saratoga County Trial Term in favor of plaintiffs and from an order denying his motion for a new trial.

The action was brought by plaintiffs as the executors of Maria F. De Vivo, deceased, against defendant for conversion of $12,562.50. The plaintiff, Madeline Smaldone, is the daughter of defendant and her husband is a son-in-law. Maria F. De Vivo, the decedent, was defendant's wife. About eleven months after the commencement of this action the same plaintiffs instituted an action against Paul Marocco, an attorney, on the very same state of facts. Subsequently, these actions were consolidated. After trial Marocco was exonerated and defendant was charged with liability. Defendant and Maria F. De Vivo were Italian immigrants. They had been residents of Saratoga Springs for about forty-two years. They had six children, five of whom were living. The wife died on April 30, 1948, at the Utica State Hospital at the age of seventy-three years. Defendant was about the same age. For years defendant conducted a grocery and fruit business in the city of Saratoga Springs. Apparently they accumulated a substantial sum of money and in October, 1946, they made a division of the funds whereby the wife received $15,900, which she deposited in the Adirondack Trust Company of the City of Saratoga Springs.

Apparently the husband and wife lived in harmonious relationship until 1947, when defendant went to the city of New York for the purpose of a medical examination as to his physical condition. While the husband was absent, withdrawals were made from the wife's account in favor of the daughter, Madeline. After the husband's return and after he discovered that the wife had donated some of the funds to her daughter, he asked for her commitment on the ground that she was insane. The papers were prepared by Marocco. Apparently, the defendant did this to prevent further withdrawals of the funds by the wife. That proceeding was discontinued.

In June, 1947, the wife was examined by two physicians. No commitment was then made because one of the doctors testified that she was competent. Subsequently, there was a trial before a commissioner and a jury. On that hearing two doctors testified that the wife was competent. In that proceeding the jury failed to agree. Subsequently, the incompetency proceedings were discontinued. Meanwhile, defendant, through his attorney, had obtained from the County Judge of Saratoga County an order prohibiting the withdrawal of funds from the wife's account. On October 10, 1947, after the discontinuance of the incompetency proceeding the Saratoga County Judge made an order directing the Adirondack Trust Company to release the wife's account. On October 14, 1947, defendant and his attorney withdrew from this account the sum of $12,562.50 on a check signed by the wife, dated October 10, 1947.

The question which we have in this case is: Did the defendant convert this money to his own use? After the commencement of the action and before the trial, plaintiffs, pursuant to section 322 of the Civil Practice Act, served upon defendant's attorney a notice requiring defendant to admit thirty-one facts. Defendant filed his verified answer to that notice in accordance with the provisions of that statute. Practically all these interrogatories and the answers involved communications between defendant and his wife. His admissions were subject to explanation and it was error to exclude that proof (*Wachtel* v. *Equitable Life Assur. Soc.*, 266 N. Y. 345). These admissions were offered in evidence on the trial by plaintiffs. It is the defendant's contention that by demanding and receiving these admissions and by offering them in evidence the plaintiffs opened the door so that defendant and Marocco should have been permitted to give their version of the transaction. This contention was made on the trial and plaintiffs' objection was sustained by the court. In making its ruling the court relied on *Matter of Callister* (153 N. Y. 294). We think the testimony of Marocco was competent and admissible on behalf of defendant. On his cross-examination Marocco was asked if on October 14, 1947, he went to The Adirondack Trust Company with the defendant and with defendant's wife. The court sustained the objection to which an exception was taken. He was also asked if he was present when the wife signed the check on October 10th. He was not permitted to answer. We think the court erred in refusing to permit this witness to answer. While not a competent witness on behalf of himself, Marocco was certainly a competent witness on behalf of defendant. When the court refused to permit Marocco's version of the transactions of October 10 and October 14, 1947, it deprived defendant of the only actual eye witness to those transactions. Certainly this ruling was prejudicial to defendant (*Jones* v. *Thomas*, 76 App. Div. 596; *Kings Co. Trust Co.* v. *Hyams*, 242 N. Y. 405).

The *Callister* case upon which the court below relied is clearly distinguishable. A reading of the opinion in that case clearly discloses that it has no application to the facts here. We also think that the admission of the records of the Utica State Hospital was prejudicial to defendant. Those records dealt with the condition of decedent from October 18, 1947, until the date of her death. Presumptions do not run backwards. Because decedent may have been incompetent on December 22, 1947, as testified to, does not indicate that she was incompetent on either October 10 or October 14, 1947 (*MacRae* v. *Chelsea Fiber Mills*, 145 App. Div. 588).

This is a close case and for that reason any error which occurred on the trial should be scrutinized carefully. After being out a number of hours the jury

returned and stated that they were unable to agree. The trial court sent them back and finally they returned a second time with a verdict of ten to two in favor of plantiffs and no verdict as to Marocco. The Trial Judge again directed them to return to the jury room and later they returned with a verdict exonerating Marocco.

It is quite clear from the record that the jurors were confused as to the issues submitted to them. In my opinion justice requires that there should be a retrial of this cause and I, therefore, vote to reverse the judgment and order appealed from and to direct a new trial.

FOSTER, P. J., BERGAN and COON, JJ., concur in memorandum by the court; HEFFERNAN, J., dissents, in an opinion; DEYO, J., not voting.

Judgment affirmed, with costs.