In the Matter of the Accounting of ARTHUR V. JENNINGS, as Coadministrator of the Estate of WALTER F. JENNINGS, Deceased, Respondent. JOSEPHINE JENNINGS et al., Appellants.

Second Department, June 13, 1955.

*Samuel A. Locker* for appellants.

*Anthony B. Cataldo* for respondent.

MURPHY, J.  On July 8, 1948, Walter F. Jennings, hereinafter referred to as '' the decedent '', withdrew $2,360 of $2,362.35 on deposit in a savings account maintained by his wife and himself in fictitious names at the Williamsburgh Savings Bank.  The

withdrawal was manifested by a bank check drawn by the Williamsburgh Savings Bank on the Bank of the Manhattan Company, dated July 8, 1948, to the order of W. F. Jennings, decedent's true name. We are concerned with the alleged delivery of that check by the decedent to his brother, appellant William J. Jennings, hereinafter referred to as "William."

On July 13, 1948, the bodies of the decedent and his wife were discovered at their home by the police. William arrived about thirty minutes thereafter. The police retired from the home leaving William in sole and exclusive possession of the effects of the decedent. William received about $150 from the police, which they had found in the house. William also took some silverware to his own home.

On July 15, 1948, the bank check was deposited in the Springfield Gardens National Bank in an account in the name of Josephine Jennings, wife of William, hereinafter referred to as "Josephine". The check bears the indorsements of decedent, William and Josephine, in that order. She claims it as her own.

On or about December 1, 1948, William and his brother, respondent Arthur V. Jennings, hereinafter referred to as "Arthur", were appointed coadministrators of the estate of the decedent. Up to that time William had maintained sole and exclusive possession of the assets of the estate.

This discovery proceeding was instituted by Arthur to determine whether the proceeds of the bank check belonged to the estate. At hearings conducted before a Referee appointed to hear and report, William was permitted to testify, without proper objection, that on July 7, 1948, he had a telephone conversation with decedent, and that on the following day (date of withdrawal) he visited decedent and received the bank check with the indorsement of the decedent thereon, that he kept the check for a day and then gave it to his wife with the indorsements thereon of decedent and himself.

The foregoing testimony was incompetent. It was offered by an interested party as to circumstances from which an inference of delivery of the check could be drawn. (Civ. Prac. Act, § 347; *Grey* v. *Grey,* 47 N. Y. 552, 553; *Kings Co. Trust Co.* v. *Hyams,* 242 N. Y. 405.)

So, too, a deposition of Josephine, procured by respondent as an incident of his attempt to discover assets of the estate, affords no basis for a finding of delivery of the check. In that deposition, Josephine testified to receiving the check from her husband during the lifetime of the decedent. Having been procured during the course of investigation, it was error for the Referee

to have admitted the deposition in evidence at the hearings in the discovery proceeding. (*de Laurent* v. *Townsend*, 243 N. Y. 130; *Matter of Van Volkenburgh*, 254 N. Y. 139.)

In his report, the Referee concluded that there was no proof of delivery of the check by the decedent to William. It was within the province of the Referee to sift the proof and to disregard that which was incompetent. Distributees should not be deprived of their rightful shares because no proper objection was interposed to incompetent proof. In any event, Josephine, on her motion to reject part of the report, expressly apprised the Surrogate of the foregoing alleged proof of delivery and of the fact that the Referee had ignored it. The Surrogate, in adjudging the check to be an estate asset, must be deemed to have evaluated such proof. He stated in his opinion deciding the motions addressed to the Referee's report: " On *all the proof* the court finds there was sufficient relevant material and competent testimony to sustain the findings of the referee " (emphasis supplied).

In brief, the material proof consists of the undisputed facts that the check with the indorsement of decedent was deposited by appellants two days after decedent's death, with William in exclusive possession and control of decedent's house and effects in that interim.

Ordinarily, possession of an indorsed negotiable instrument imports delivery. (Negotiable Instruments Law, § 35.) That presumption falls, however, where, as here, a negotiable instrument is claimed by one whose title is derived from a decedent whose effects the claimant immediately and exclusively had possessed. (*Cowee* v. *Cornell*, 75 N. Y. 91, 96; *Matter of Narganes*, 161 App. Div. 563, 567, affd. 213 N. Y. 659.) Such possession of the instrument proves nothing in derogation of the ownership thereof by the decedent. (*Matter of Canfield*, 176 App. Div. 554, 557; *Matter of Peno*, 128 Misc. 718, 730; *Matter of Haber*, 151 Misc. 82, 84.)

There is no merit to appellants' contention that a prior adverse adjudication is controlling. One of the objections interposed to an account of William as coadministrator presented the same issue, namely, whether the $2,360 check constituted an asset of the estate. An Official Referee to whom the matter had been referred to hear and determine, after the taking of proof, stated in memorandums made July 3, 1951, and July 17, 1951, that such objection was dismissed. No decree has ever been made in the accounting proceeding. " Until a final judgment has been entered, the proceedings are subject to change and modification

and avail nothing as a bar." (*Brown* v. *Cleveland Trust Co.*, 233 N. Y. 399, 406.) The order appealed from is the original and only adjudication of the issue.

The form of the check is immaterial in this proceeding. If this were an ordinary check drawn by decedent on a bank to the order of William, even though not collectible at the bank after decedent's death, it would be collectible, assuming delivery, against his estate (*Matter of Kolben*, 203 Misc. 1012). Whether this bank check is collectible directly from the drawee bank despite the death of the payee (*Bobrick* v. *Second Nat. Bank*, 175 App. Div. 550; *Matter of Bank of United States*, 243 App. Div. 287, 291), or from this solvent estate, is academic. It is the element of delivery, essential to render it collectible at all, which is here in issue.

The further contentions of appellants with respect to allowances, costs and disbursements have been considered.

The decree should be affirmed, with costs, payable by appellants personally.

NOLAN, P. J., dissents and votes to reverse and to direct a new hearing, with the following memorandum: The conclusion of the Referee, which was confirmed by the order appealed from, to the effect that there was no proof of the delivery of the check by the decedent to William, may be justified only by disregarding the testimony of William and Josephine as to the delivery of the check. While it was within the province of the Referee to sift the proof, it was not within his province to disregard that which he had admitted in evidence and later determined to be incompetent. The testimony, whether competent or not, had been admitted, and appellants were entitled to rely on it. The Referee could have refused to credit it, but neither he nor the Surrogate could ignore it, nor may we do so. (*Flora* v. *Carbean*, 38 N. Y. 111, 113; *Levy* v. *Louvre Realty Co.*, 222 N. Y. 14, 21; *Gries* v. *Long Island Home Ltd.*, 274 App. Div. 938.) Since the determinative question is one of veracity, it should be decided by the trier of the facts, who can see and hear the witnesses, and who will be in a better position to do so than was the Surrogate, or than this court is on consideration of the record. (See *Boyd* v. *Boyd*, 252 N. Y. 422, 429; *Amend* v. *Hurley*, 293 N. Y. 587, 594, and *Ferguson* v. *Ferguson*, 271 App. Div. 976.)

SCHMIDT, BELDOCK and UGHETTA, JJ., concur with MURPHY, J.; NOLAN, P. J., dissents with memorandum.

Decree of the Surrogate's Court, Kings County, affirmed, with costs, payable by appellants personally.