THE HOME INSURANCE COMPANY OF NEW YORK v. ELLEN
B. JONES HANDLEY, as Administratrix of the Estate of
B. JONES, deceased.

162 So. 516.

Division B.

Opinion Filed June 27, 1935.

*Cockrell & Cockrell,* for Plaintiff in Error.

*Davis & Davis,* and *R. C. Horne,* for Defendant in Error;

ELLIS, P. J.—In December, 1928, B. Jones brought an action in the Circuit Court for Madison County for trover and conversion against the Home Insurance Company of New York, a corporation, and Jacob Vickers because of alleged conversion by them of a fire insurance policy which was described in the declaration by number and the amount of insurance carried. The declaration is in the statutory form for the wrongful conversion of goods. Section 4314, Par. 26, C. G. L., 1927.

B. Jones died in October, 1929, and his wife became the administratrix of his estate and was by order of court, dated April, 1934, substituted as the plaintiff. Prior to the latter date there had been a verdict and judgment for the defendants entered upon an order of the court directing a verdict for them.

A writ of error was taken from this Court to such judgment and the same was reversed. See Hendley v. Home Ins. Co., 112 Fla. 225, 150 South. Rep. 902.

The evidence is substantially set out in the opinion and the Court, speaking through Mr. Justice Buford, said: "There was sufficient evidence to warrant the case going to the jury for the purpose of having the jury determine the fact as to whether or not the defendants were jointly guilty of an unlawful conversion, or as to whether or not either of them were guilty of an unlawful conversion."

It was determined in that case that an action of trover may be maintained for the conversion of an insurance policy whether it be fire, life or marine insurance. It was also stated that it appeared to be the rule that the measure of damages in such case is the full amount of the policy and a judgment against the insurance company would in effect cancel the policy.

It was further pointed out by the court that the withdrawal of the policy by Vickers at the direction of the company from the bank where it had been hypothecated by the insured Jones as security for the payment of a promissory note and which action of Vickers placed the policy beyond the reach of Jones was sufficient when uncontradicted to constitute a basis for a judgment against the insurance company because of its active participation with Vickers, its agent, in the wrongful conversion of the policy.

Vickers was the agent of the insurance company. He was also an employee or officer of the bank. The policy was issued by Vickers in his capacity of agent for the insurance company in September, 1927. It was not delivered to Jones although the issuing of the policy was reported to the company on the date of its issue. Jones owed a debt to the bank to which the policy was delivered with his consent and held as security to protect the loan which the bank had made to him.

The policy upon which the premium had been paid, was

about two weeks later taken by Vickers without consulting or notifying Jones and sent to the Home Insurance Company upon its direction to be cancelled. After the policy was withdrawn the fire occurred.

At the second trial of the case, which occurred in April, 1934, the jury returned a verdict against the insurance company and found the defendant, Vickers, not guilty.

. The evidence disclosed that in September, 1927, Jones was practically blind and his wife transacted his business for him. She applied for the insurance to Vickers. It covered a skating rink, dance hall and cafe and fixtures. The premium was paid by her to Vickers. It amounted to seventy-six dollars and thirty cents. The building and fixtures were destroyed by fire on Monday after Easter Sunday in 1928.

. Upon the day the fire occurred Mrs. Jones requested Mr. Vickers to produce the policy and he told her that there was no insurance on the property. It was the first notice the Joneses had that there was no policy of insurance covering the property. That was more than a year before the death of Jones. No part of the premium paid for the insurance was returned.

Vickers was an employee of the Greenville Bank in 1927 and wrote the policy of insurance for the defendant company as its agent and attached it to the Jones mortgage held by the bank of which Vickers was an employee. On November 12, 1927, Vickers sent the policy of insurance to the "Stamping Office" in Jacksonville to be forwarded to Home Insurance Company, New York "According to instructions, when policies are cancelled. While Vickers attempted to cancel the policy upon instructions from the company no part of the premium paid was returned to the Joneses.

Mr. Vickers said that he held the premium for the "purpose of covering property in another company."

. Counsel for the plaintiff in error contend that the plaintiff can recover against the company only upon the doctrine of *respondeat superior*, as Vickers acted as the agent of the company in cancelling the policy and as he was held to be not guilty of conversion the principal could not be; that the exoneration of the servant or agent *ipso facto* exonerates the principal. The case of Williams v. Hines, 80 Fla. 690, 86 South. Rep. 695, is referred to as one in point. The case is not analogous to the one at bar. There is no exception to the doctrine announced in the Hines case, *supra*. In that case Williams sought damages for personal injuries alleged to have resulted from the negligent operation of a locomotive and train of cars belonging to the railroad corporation of which Hines was Director General. The negligent act was alleged to have been committed by an engineer upon the locomotive which propelled the cars upon another train of cars in which plaintiff, Henry Williams, was a passenger.

. There was a verdict against Hines who moved for a "judgment *non obstante veredicto*." The action was brought against the Director General, Hines, and the locomotive engineer, Drew Williams, the employee of the defendant, Hines. There was a verdict against Hines but the jury found Drew Williams to be not guilty. The motion of Hines was granted and judgment was entered for the defendants. This court affirmed the judgment saying that as the plaintiff's recovery was "based solely on the acts of the employee, we feel that under our laws of pleading the action of the trial judge was not erroneous." The doctrine for which counsel for plaintiff in error contend was announced in the following words: "Where the jury, however,

·have all the evidence before them and there is no conflict whatever as to the ·acts of the engineer, it would, in the words of the judge already quoted in a similar case, be 'monstrous' to say that the engineer was blameless, but his master, who was only liable because of his acts, by virtue of a mere presumption, was negligent."

No case analogous to that one is presented here either by the declaration or the evidence. The Home Insurance Company and Vickers were sued jointly, not as principal and agent, for the conversion of the policy of insurance. The fact that Vickers was the agent through whom the policy was issued, which when issued and the premium paid became the property of Jones, did not perpetually continue the relation of principal and agent nor establish the existence of that relation when the company assumed to exercise dominion and control over the property inconsistent with Jones' ownership of it by directing its agent to withdraw the policy and return it for cancellation. According to Vickers it was upon such instructions from the company that he withdrew the policy, sent it in to the "stamping office" to be marked cancelled and returned to the company.

Vickers was undoubtedly guilty of a conversion in such circumstances but so was the company. They were jointly guilty of the same offense, but in such case the acquittal of one does not exonerate the other. See Peacock v. Feaster, 51 Fla. 269, 40 South. Rep. 74; Shaw v. Saunders, 79 Fla. 846, 85 South Rep. 162.

This action rests upon the theory that the policy of insurance was the property of Jones, that the removal of the policy from the bank by the defendants constituted an exercise of dominion and control over it inconsistent with the owner's right of possession. The bank's possession of the policy which was held by it as collateral security for the

payment of a debt due by Jones was his possession and the removal of it from the bank without the consent of Jones by the defendant, Vickers, upon instructions from the company constituted the exercise of ownership and control over it inconsistent with Jones' rights as its true owner; that the company participated in the conversion by instructing Vickers to remove the policy; Vickers participated in the conversion by actually removing it. While the latter could not in law justify himself by saying that he acted in the matter as agent of the company yet the company was not exonerated because the jury through a mistaken view of the case, if such was the fact, thought that Vickers acted in the matter solely as the agent of the company and was therefore not personally guilty of the conversion.

The removal of the policy by Vickers with the intention of replacing it with a policy in another company of which he was agent and with the purpose of using the premium which had been paid to procure another policy in another company and that in this matter he acted in good faith cannot justify his act in taking the policy from the bank's possession which was Jones' possession. The act was an assumption of general ownership and property; the assertion of a power to place the policy in the possession of the company which was inconsistent with Jones' rights and ownership.

That constituted a conversion by Vickers. That he did it upon instructions from the Home Insurance Company, which he represented as agent does not relieve Vickers nor does the acquittal of Vickers exonerate the Company which procured the possession of the policy through its agent upon the Company's instructions. See Robinson v. Hartridge, 13 Fla. 501.

The second question presented by the brief of counsel for

plaintiff in error raises the point that where the administratrix examines an adverse party with reference to communications between the party and a decedent, the co-defendant of such party may examine him with reference to the same transaction with the decedent.

The case of Booth v. Lenox, 45 Fla. 191, 34 South. Rep. 566, is cited to support the proposition. In that case a widow sought to establish a resulting trust in lands bought by her husband with her funds and the title to the land was taken in his name. The heirs at law of the deceased or some of them testified as to the moneys used, undertaking to show that they were moneys of the husband derived from insurance on property destroyed by fire and partly from his earnings in carpentry work, which testimony "involved communications had between them (the heirs) and the deceased." The court said that "testimony of the heirs removed the prohibition against the living wife's testifying as to such transactions, and qualified her, under the statute, to give her version of them."

Under the terms of the statute, Sec. 4372 C. G. L. 1927, Sec. 1095, R. S. 1892, Vickers was not disqualified from testifying as a witness in the case in his own behalf, or on behalf of the Home Insurance Company, or on behalf of the administratrix of Jones' estate by reason of his interest or because he was a party. He was precluded from testifying as to such transactions and communications with Jones as against the latter's administratrix, heir at law, next of kin, or assignees.

Written interrogatories at one stage of the case had been propounded to Vickers, by whom the record does not state. Those interrogatories and the answers thereto were read without objection from either one of the defendants save upon the grounds that they were directed to Vickers only;

that the company was given no notice of them; that there was no necessity for reading the questions and answers because Vickers was in the courtroom at the time of the trial and could be personally examined from the witness stand and the Home Insurance Company had had no opportunity to cross examine the witness. That objection was abandoned because the matter has not been made the subject of any discussion in the brief on behalf of plaintiff in error and the point is not embraced in the two question of law stated in the brief to be presented. Those questions and answers tended to establish the issuing of the policy by Vickers as agent for the Home Insurance Company, the receipt of the premium, the remittance of it to the company, the deposit of the policy in the bank as security for the payment of a debt due by Jones, the removal of it by Vickers upon the company's instructions, the cancellation of the policy and the fact that the premium paid was not returned to Jones, and that Jones had not demanded the delivery of the policy to him or any one for him.

Vickers was then examined as a witness from the witness stand. He testified that he had written the policy for Jones, that it was held by the bank that he kept the policy in his possession at the bank and then upon instructions from the company sent it to the stamping office at Jacksonville to be cancelled. He testified as to what the general instructions were in such cases, the number of the policy; that he wrote policies for the Home Insurance Company and paid the company the premium for the insurance which was subsequently returned to him and that he never returned any part of the premium to Jones; that the policy was a standard form, and the company instructed him (Vickers) to cancel it.

Mr. Cockrell, counsel for the insurance company, sought

on cross examination to show that Vickers told Jones at the time the policy was issued that it was likely to be cancelled; that Jones asked him to get some fire insurance but did not specify the name of the company; that he told Jones that the policy had been cancelled; that the policy contained a provision for its cancellation; that Jones agreed to the cancellation of the policy; that Vickers substituted another policy in the Royal Exchange Assurance Company for the policy in the Home Insurance Company with the consent of Jones; that the Home Insurance Company never received the premium; because of the custom that the agent is given sixty days after the policy is issued to transmit the premium; that Vickers on cancelling the policy transferred credit to Jones on account of the Royal Exchange Policy; that he returned to Jones the unearned premium after the cancellation of the policy and the amount returned. Objections were sustained to the questions which sought to elicit the information indicated and exceptions were duly taken to the court's rulings.

The questions were not of the character described by the court in the case of Booth v. Lennox, *supra,* where the defendants first testified in their own behalf as to transactions with the deceased and where the court held that such testimony removed the prohibition against the living wife's testimony in explanation of them.

The plaintiff in this case did not seek from Vickers any account of transactions and communications with Jones. She sought merely to show that Vickers as agent of the company issued the policy and placed it in the bank as security for the payment of the debt owed by Jones. The attempt by counsel to show such transactions and communications with Jones on cross examination was for the purpose of securing the benefit which Vicker's testimony as

to such communications and transactions would secure both to Vickers and the company. Such procedure was not only forbidden by the statute, Sec. 4372, C. G. L., 1927, *supra,* but was not in cross of any matter developed in the direct examination.

Nor was it an attempted explanation of any matter or transaction with Jones had by Vickers which the plaintiff had previously testified about.

The inhibition of the statute cannot be circumvented by obtaining a self-serving account from a party to the action of transactions and communications with a deceased person under the guise of a cross examination of such party where the direct examination neither sought nor produced from the party examined as a witness an account of such transactions.

We are favored with the citation of no authority in support of counsel's contention.

The case of Stream v. Barnard (120 Ohio St. 208), 165 N. E. 727, is not in point. The case is in line with the doctrine announced in Booth v. Lennox, *supra,* as said by Mr. Justice ROBINSON in Stream v. Barnard, no litigant can be permitted to require his adversary that he testify to his knowledge that relevant matter which is favorable to such interrogating litigant without at the same time waiving the incompetency of such adversary to testify of his knowledge that which is relevant and unfavorable to such interrogating litigant.

But no such attempt was made here. Vickers was merely interrogated as to his own action as agent of the company in issuing a policy, depositing it in the bank and his cancellation of it upon instructions from the company. The evidence merely tended to show the existence of a policy,

the receipt of the premium and the conversion of the policy by both himself and the company.

Communications and transactions between Vickers and Jones at or about the time of issuing the policy and shortly afterwards which counsel sought to elicit on cross examination was the introduction of new and different matter wholly beneficial to the party testifying and in violation of the statute.

There was no error in the Court's ruling on these questions. The matter as to Vicker's "gray record book" and its exclusion from the evidence is not embraced within the two questions of law stated in the brief to be involved.

The judgment of the court is affirmed.

TERRELL, and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.