94 So.2d 371 (1957)
Ann SMALL, Appellant,
v.
Rose SHURE by her Conservator City National Bank and Trust Company of Chicago, Appellee.
Supreme Court of Florida, Division B.
April 10, 1957.
*372 Joseph A. Hackney, Miami, for appellant.
Dunn & Hickey and Hoffman, Kemper & Johnson, Miami, for appellee.
DREW, Justice.
This is an appeal from a final judgment on written obligations to pay money. The judgment was in the sum of $26,000 and represented the amount of principal due from the appellant Small to the appellee Sam Shure, as executor of the estate of Rose Shure, deceased, on three written obligations to pay money in the sum of $10,000, $5,000 and $11,000 respectively. These obligations read as follows:
 "Miami Beach, Florida
 Apr. 27th, 1951
"I owe Rose Shure ten thousand dollars
 "s/ Ann Small"
 "September 27, 1951
"I owe Rose Shure eleven thousand dollars
 "s/ Ann Small"
 "September 6th 51
"I owe Rose Shure 5 thousand dollars.
 "s/ Ann Small"
The payee of these obligations was deceased at the time of the trial.
Prior to the trial the plaintiff took the deposition of Ann Small, the maker of these obligations, but this deposition was never introduced in evidence although it appears in the original record which is before us.
At the trial before the court without a jury, Ann Small the maker of the three written instruments was called by the plaintiff as a witness on behalf of the plaintiff and she testified concerning these instruments as follows:
"Q. Now, Mrs. Small, I show you an instrument purporting to be an I.O.U., and I ask you whether or not *373 you have ever seen the instrument before? A. Yes, that is my writing.
"Q. Is that your writing on the instrument? A. Yes.
"Q. Did you write everything on the instrument, `I owe Rose Shure ten thousand dollars'? A. Yes.
"Q. This note is dated April 27, 1951. Did you ever repay any part of this money? A. She didn't want me to.
"Q. Did you ever repay it? A. No.
"Mr. Dunn: I would like to introduce this in evidence as Plaintiff's Exhibit A, if the Court please.
"Mr. Hackney: No objection.
"Q. (By Mr. Dunn) Now, Mrs. Small, I hand you an instrument dated September 6, 1951, and ask you whether or not you have seen this instrument before. A. Yes; that is my writing.
"Q. Is that your handwriting on there? A. Yes.
"Q. Did you write, `I owe Rose Shure five thousand dollars?' A. I did.
"Q. That is your signature? A. Yes.
"Q. Did you ever repay any part of this? A. No.
"Mr. Dunn: I would like to introduce this into evidence as the next Plaintiff's Exhibit.
"The Court: Let's get these exhibits marked properly. We are going to mark this form, letters testamentary, as Exhibit No. 1.
"Plaintiff's Exhibit 2 will be this document which we have here, the I.O.U. for $10,000.
"This third exhibit will be the one just offered, and will be marked Plaintiff's Exhibit No. 3, which is the I.O.U. for $5,000.
"Mr. Hackney: No objection.
"(The documents referred to were thereupon marked "Plaintiff's Exhibits Nos. 1, 2 and 3.")
"Q. (By Mr. Dunn) Mrs. Small, I show you an instrument dated September 27, 1951, and ask you whether or not you have ever seen this instrument? A. Yes, it is my writing.
"Q. Is that your writing and signature? A. Yes; it is.
"Q. That is the instrument containing the words: `I owe Rose Shure eleven thousand dollars'? A. Yes.
"Q. Has any part of this been repaid? A. No.
"Mr. Dunn: I offer this in evidence as Plaintiff's Exhibit No. 4.
"Mr. Hackney: No objection.
"The Court: All right. It will be marked.
"(The document referred to was thereupon marked "Plaintiff's Exhibit No. 4.")
"Q. (By Mr. Dunn) Mrs. Small, did you receive the money represented by each of these I.O.U.s, which you signed? A. Yes  not in a lump sum  $200.
"Q. Did you receive it? A. Yes, I did.
"Mr. Hackney: I would like to request counsel to aim his questions this way a little because I am afraid she doesn't hear.
"The Witness: I can hear.
"The Court: The answer was yes, wasn't it?
"Mr. Hackney: It was a qualified answer, that's why I didn't think she heard the question.

*374 "The Court: All right. Do you want to answer it more fully? Go ahead.
"Mr. Dunn: You may inquire."
Following the above direct examination, the attorney for Mrs. Small proceeded to cross-examine her with reference to the question propounded on direct by the plaintiff's attorney, viz. "Mrs. Small, did you receive the money represented by each of these I.O.U.s, which you signed?" From such examination Mrs. Small attempted to testify that there had been no consideration received by her for the note for $11,000. She attempted to testify that Mrs. Shure had told her she would loan her $1,000 if she wanted it, whereupon she sent Mrs. Shure the $11,000 note which was for the purpose of replacing the $10,000 note and evidenced the additional $1,000 loan. She testified at length concerning the circumstances under which she executed the note, referring at various times to the fact that all of the transactions arose out of some betting venture on the horse races but the hearing concluded with the following:
"Mr. Hackney: It is my understanding then, that the Court rules we are not entitled to present that testimony?
"The Court: No; the Court says that the statute forbids you to do it.
"Mr. Hackney: Then the defendant rests.
"The Court: Enter up a judgment. It certainly doesn't pay to gamble."
The question, therefore, which we must decide is whether the witness was, under the circumstances related above, disqualified to testify under Section 90.05, Florida Statutes 1955, F.S.A. (commonly called the "Dead Man's Statute"). Relevant parts of the statute above referred to provide that "no party to such action or proceeding ["in any court, or before any officer acting judicially"] * * * shall be examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased * * * against the executor * * * of such deceased person * * *." It is well settled that the protection of the statute can be waived by parties therein protected. E.g. McMullen v. St. Lucie County Bank, 1937, 128 Fla. 745, 175 So. 721; Rich v. Hunter, 1938, 135 Fla. 309, 185 So. 141.
Plaintiff's act of deposing defendant did not waive the protection of the statute where no part of the deposition was offered in evidence. See Herring v. Eiland, Fla. 1955, 81 So.2d 645; Embry v. Southern Gas & Electric Corp., Fla. 1953, 63 So.2d 258; Catlett v. Chestnut, 1935, 117 Fla. 538, 158 So. 418. A review of the record shows that plaintiff did not consciously give up protection offered by the statute, but intended to claim all of his rights throughout the trial.
The inquiry then focuses upon whether or not plaintiff "waived" protection under the statute in spite of his intention by placing defendant on the stand and asking her questions to the following effect: (1) did defendant sign the several notes? (2) did defendant repay any of the sums identified by the notes? (3) did defendant receive the sums identified by the notes?
The answer to this question turns in part upon the concept of waiver. Here, we speak of "deemed" or constructive" waiver. A party should not be allowed to make use of part of the possible testimony of a witness which is favorable to him, and to exclude the remainder which may be prejudicial. This is particularly applicable to situations such as this. See Home Insurance Co. of New York v. Handley, 1935, 120 Fla. 226, 162 So. 516, 64 A.L.R. 1168. For instance, in Zackheim v. Zackheim, 1924, 75 Colo. 161, 225 P. 268, 269, the court said: "He for whose protection the statute was enacted may not juggle with it. He may not claim it in part and waive it in part, as suits his convenience. Otherwise this act, passed for the purpose of preventing fraud, might *375 become the instrument of fraud." In Miller v. Consolidated Royalty Oil Co., 8 Cir., 1927, 23 F.2d 317, 320, the court very aptly observed that "a litigant cannot be permitted to open the mouth of his adversary so long as he speaks favorably, and then close it to an adverse statement".
The signature of defendant is an external matter which has existence unrelated to any transaction or communication between defendant and deceased. The defendant properly testified that a writing exhibited to her was her own signature. This matter was not within the statute. Cf. Seeba v. Bowden, Fla. 1956, 86 So.2d 432; see Hoes v. Negele, 1898, 28 App.Div. 374, 51 N.Y.S. 233.
When plaintiff called and examined defendant as a witness [a step obviously not necessary to prove a prima facie case] the incompetence of defendant under the statute as to matters which plaintiff inquired into were clearly waived by him. See Herring v. Eiland, supra. The answer that defendant had made no repayments concluded that matter and the verified notes established the debt.
The last question which plaintiff posed did open up a matter which defendant then had a right to answer. The inquiry of whether the defendant received the sums identified by the notes, called for an answer by defendant, which she had the right to fully explain by further testimony on direct or cross-examination. It is true as we have observed that plaintiff did not have to ask the question to prove his prima facie case; but once the question was asked, which favored plaintiff's case and was germane to the defense of failure of consideration, the defendant could answer fully in the matter.
Reversed and remanded.
TERRELL, C.J., and HOBSON and O'CONNELL, JJ., concur.