In the Matter of Domenick DINO, Jr. and Theresa Iris Dino, Debtors.

FARMER'S HOME ADMINISTRATION, Plaintiff,

v.

Domenick DINO, Jr. and Theresa Iris Dino, Defendants.

Bankruptcy Nos. 81–447, 81–214.
Adv. Nos. 81–199, 81–197.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Jan. 28, 1982.

Malka Isaak, Tampa, Fla., for debtors/defendants.

Francis H. Cobb, Tampa, Fla., for Southeast Bank.

Gary J. Takacs, Asst. U. S. Atty., Tampa, Fla., for Farmer's Home Admin.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding and the matter under consideration is the dischargeability, vel non, of a debt admittedly due and owing by the Debtors, Domenick Dino, Jr. and his wife, Theresa Iris Dino, to the Southeast Bank of Tampa. A brief recitation of the procedural events of the case is necessary to an understanding of the present posture of the matter under consideration.

On February 9, 1981, Theresa Iris Dino filed her petition for relief under Chapter 13 of the Bankruptcy Code. On February 18, 1981, the case was converted to a Chapter 7 proceeding. Her husband, Domenick Dino, Jr., subsequently filed his petition for relief under Chapter 7 of the Code and on July 9, 1981, the cases were consolidated in view of the fact that they could have filed jointly under § 302 of the Code. In addition, they had several identical creditors.

On June 1, 1981, Southeast Bank of Tampa (the Bank) filed two separate but almost identical, complaints · against Domenick Dino and Theresa Dino and sought to determine dischargeability of their debts. The Bank also objected to discharge of the Debtors. Upon consideration of the record, the Court found that both complaints involved the same loan transaction and the same allegedly fraudulent transfer and ordered that the adversary proceedings be consolidated. On December 11, 1981, the Farmer's Home Administration (FmHA) filed a Motion to Intervene as Real Party in Interest. After an emergency hearing on the Motion, the Court denied the Motion to Intervene but ordered that FmHA be substituted as party Plaintiff in place and stead of the Bank. The deadlines previously fixed by the Court to exchange names and addresses of witnesses and copies of documents to be presented at trial were waived and it was ordered that parties would be allowed to freely present witnesses and documents.

· At the final evidentiary hearing, counsel for FmHA stated that FmHA would base its claim that the debt is non-dischargeable on § 523(a)(6) which excepts from discharge a debt resulting from willful and malicious injury by the Debtor to the property of another entity. It is the contention of FmHA that the Dinos willfully and maliciously injured its property, in that they unlawfully converted the collateral for the loan granted by the Bank guaranteed by FmHA when they sold or transferred the collateral without authorization. FmHA also objects to discharge of the Debtors under § 727(a)(5) on the grounds that they cannot satisfactorily explain the loss or deficiency of the assets, i.e. the collateral, therefore, pursuant to § 727(a)(5), they are not entitled to a discharge.

Since the record was devoid of any evidence on either Count against Mrs. Dino, the Court announced that the complaint against her will be dismissed in toto at the end of the Plaintiff's case. It is also clear that the record is devoid of any evidence to sustain the claim of FmHA that the Debtors are not entitled to a general discharge. Accordingly, the Count based on § 727(a)(6) should be dismissed with prejudice. This leaves for consideration only that allegation of conversion against Domenick Dino, Jr. (Dino).

The following facts are without dispute:

The Debtors were the sole proprietors of D & D Dairy. On June 11, 1979, Robert N. Morris, Vice-President of Southeast Bank of Tampa, and the Debtors executed a Loan Agreement with the Debtors. The Agreement provided that the Bank would lend $363,170 to the Debtors subject to certain conditions, one of the conditions being that FmHA will guarantee 90% of the principal loan amount. FmHA agreed to guaranty 90% of the loan and on June 15, 1979, the transaction was closed. Collateral for the loan consisted of all livestock then owned or thereafter acquired by the Debtors, as well as all equipment, accounts receivable, contract rights and general intangibles owned by the Debtors, all the milk base held in Tampa Independent Dairy Farmer's Association and an assignment of milk proceeds from the Association.

It is without dispute that some of the dairy cattle which constituted the collateral were sold by Dino. In fact, Dino himself fully testified to that fact, stating that he had at least 166 head of cattle until mid-September of 1979, when he sold or transferred ten or eleven head. Subsequent to that, he sold cattle in order to meet expenses until there remained only 41 head of cattle by November of 1979. Dino contends that Mr. Morris, Vice-President of the Bank, knew of and consented to the sales.

Section 523(a)(6) of the Bankruptcy Code excepts from discharge a debt for willful and malicious injury by the Debtor to the property of another entity. This Section was derived from § 17(a)(8) and § 17(a)(2) of the Bankruptcy Act of 1898. Section 17(a)(8) excepted from discharge those debts which were "liabilities for willful and malicious injury to . . . property of another *other than conversion* as excepted under Clause 2 of this Section" (emphasis supplied). Section 17(a)(2) of the Act excepted from discharge those debts which were for willful and malicious conversion of another's property. These Sections were merged in the Code and "willful and malicious injury" under § 523(a)(6) includes willful and malicious conversion. 3 *Collier on Bank-*

*ruptcy*, ¶ 523.16 (15th ed. 1981); H.R. Rep.No. 95–595, 95th Cong., 1st Sess. 363 (1977); S.Rep.No. 95–989, 95th Cong., 1st Sess. 77 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

Conversion is generally defined as an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein. 12 Fla.Jur.2d *Conversion and Replevin*, § 1 (1979). Conversion is in essence an unauthorized act which deprives another of his property permanently or for an indefinite period of time. Generally, a person without a cognizable ownership interest in the converted property has no standing to assert a claim for conversion. However, it is now recognized that one whose right to the property is merely a right of possession rather than ownership may have the requisite standing to bring an action for conversion. *Carter v. Bennett*, 4 Fla. 283, *appeal dismissed*, 56 U.S. (15 How.) 354, 14 L.Ed. 727 (1853). Accordingly, a lienholder with possession or a right of possession may bring an action for conversion of the property involved. Although actual possession is not essential, the lienholder must have a present or immediate right of possession to the property in question in order to maintain the action. *Home Insurance Co. v. Handley*, 120 Fla. 226, 162 So. 516 (1935); *Rosenberg v. Ryder Leasing, Inc.*, 168 So.2d 678 (Fla. 3d DCA 1964). A lienholder with no right of possession cannot maintain an action for conversion of the liened property. *Dekle v. Calhoun*, 60 Fla. 53, 53 So. 14 (1910).

In a lien state such as Florida, an encumbered property is owned by the debtor and not by the lienholder. His lien interest is not translatable to a present possessory right to the collateral as long as the debtor meets his contractual obligations and is not in default on the underlying indebtedness. See, Fla.Stat. § 679.9–503. Therefore, if at the time of transfer of the property, the Debtor was not in default under the contract, the possessory right of the lienholder never became vested and never became translatable to a present possessory right. In such a situation, sale or disposi-

tion of the collateral is of no significance, even though unauthorized, and cannot be the basis of an actionable conversion.

In the matter under consideration, it is conceded that there was a default, which triggered the Bank's possessory interest in the collateral. Herein centers the dispute: if the sale of the cattle was unauthorized, it would constitute conversion and could render the debt non-dischargeable provided that the conversion is found to be willful and malicious and not merely a technical conversion. Although the Bank and FmHA alleged that the sale was unauthorized, no evidence was presented nor testimony given in support of the allegation. Dino testified that in fact he had been given permission by Mr. Morris, Vice-President of the Bank, to sell the cattle as long as the proceeds were put in the D & D Dairy account at the Bank. He recounted details of at least two discussions on the matter that he had with Morris, one by telephone and one in Morris' office. FmHA offered no evidence in rebuttal. Neither party called Morris or any other Bank representative to offer testimony. Although the burden of going forward with the evidence may occasionally shift, the ultimate burden remains with the Plaintiff. FmHA simply has not met this burden of persuasion.

Even assuming that there was an actionable conversion, it is necessary that the Plaintiff also prove that the conversion was willful and malicious. Malice and willfulness are indispensable elements of the charge of conversion in order to render a debt non-dischargeable. *Bennett v. W. T. Grant Co.*, 481 F.2d 664 (4th Cir. 1973). Not all conversions are willful and malicious, thus rendering the debt non-dischargeable. The bankruptcy laws are remedial in nature, and it is well settled that these laws are to be liberally construed in accordance with the intent of Congress. That intent is to relieve the honest debtor from the burden of hopeless insolvency and allow him an opportunity for a fresh start. This is also the basis for the liberal rules of construction applied to conversion in connection with questions of dischargeability of debt. 3 *Collier on Bankruptcy*, ¶ 523.16[3] (15th ed. 1981). In its failure to prove that the sale was unauthorized and an act of conversion, FmHA also failed to prove the requisite willfulness or malice.

In light of the foregoing, this Court is satisfied that the sale of the collateral did not constitute a willful and malicious conversion rendering the debt non-dischargeable.

A separate final judgment will be entered in accordance with the foregoing.