In the Matter of FLORIDA AIRLINES, INC., Debtor.

DOLPHIN LEASCO, INC., Plaintiff,

v.

Chris C. LARIMORE, Trustee, Defendant/Third-Party Plaintiff,

v.

David STEMPLER and Southern International Airways, Inc., Third-Party Defendants.

Bankruptcy No. 80–79.
Adv. No. 84–352.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 28, 1986.

See also, Bkrtcy., 57 B.R. 113.

Patti W. Massari, Straske, Farfante, Segall & Acuri, P.A., Tampa, Fla., for debtor/trustee Chris C. Larimore.

Don M. Stichter, Stichter & Riedel, P.A., Tampa, Fla., for third-party defendants, David Stempler and Southern International Airways, Inc.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER before the Court in this Chapter 7 case is the above-captioned adversary proceeding, originally initiated by a Complaint For Damages For Conversion And For Use, filed by Chris C. Larimore, Trustee (Trustee) of the estate of Florida Airlines, Inc. (Debtor). The original Complaint named David Stempler (Stempler) and Southern International Airways, Inc. (SIA) as the Defendants. By order of this Court dated December 26, 1984, this adversary proceeding was consolidated with a contested matter arising from the Trustee's Objection to the Claim filed by Dolphin Leasco, Inc. (Dolphin). The order of consolidation also directed that Part VII of the Bankruptcy Rules shall be applicable to the consolidated proceeding. As a result, the Trustee's claim against Stempler and SIA was to be tried together with the claim of Dolphin for administrative expense allegedly incurred during the pendency of the Chapter 11 and prior to the conversion of this case to a Chapter 7 liquidation case. For the sake of procedural convenience, the parties were realigned; the Trustee was named a Defendant in the claim of Dolphin and a third-party Plaintiff against Stempler and SIA, as third-party Defendants.

Dolphin's pre-petition claim was in the amount of $125,000 for damages as a result of rejection of leases of certain aircraft leased by the Debtor prior to and during the pendency of the Chapter 11 case. The administrative claim totaled $210,264.74 computed as follows: Price of replacement parts—$114,383.26; labor to install—$62,486.00; attorney fees during bankruptcy proceeding through December 20, 1983—$8,347.08; costs incurred during bankruptcy proceedings through December 20, 1983

—$440.69; and time differential computed pursuant to stipulation—$21,055.00.

Count I of the Trustee's Complaint against Stempler and SIA seeks damages in excess of $176,869 to cover parts and labor for plane parts which were allegedly taken from planes leased to the Debtor and installed on planes owned by Stempler and flown by SIA.

Count II is an action against SIA in which the Trustee seeks damages for use of office and hangar space leased by the Debtor at a monthly cost of $6,950.60, and for rental of aircraft by SIA under an oral lease from the Debtor. In addition the Trustee contends that, while SIA paid rental to the Debtor, it did not pay the time differential and for the value of the parts used during that period by SIA but not replaced when the aircraft were returned. The Trustee contends that SIA owes the estate a reasonable rental for office furniture and equipment used by SIA, and that SIA benefitted from the Debtor's hanger insurance in effect when SIA occupied the space, therefore, SIA should defray the cost of the insurance.

At the conclusion of the trial, the Trustee moved, ore tenus, to amend his pleadings to conform to the evidence. The motion was granted, over the objection of Stempler and SIA, and the Complaint was amended to allege that Stempler, as president and director of the Debtor, breached his fiduciary duty to the Debtor and its creditors by not operating the business of the Debtor-in-Possession in a prudent and commercially reasonable fashion and by incurring debts beyond the Debtor's ability to pay in the normal course of business. In addition, the Trustee contends, in support of this new theory, that Stempler knew or should have known that parts were removed from aircraft leased by the Debtor; the parts were installed in Stempler's own plane when replacement parts were not readily available from the Debtor's parts inventory; and as a result, at the termination of the Debtor's operations, Stempler's aircraft was in flyable condition at the expense of the Debtor, whose aircraft leased from Dolphin were no longer operable.

The facts germane and relevant to the resolution of the merits of the respective claims asserted by the parties, as established at the trial, are as follows:

On March 28, 1979, the Debtor and Dolphin entered into lease agreements under which Dolphin agreed to lease two Martin 404 aircraft, N255S and N258S respectively, to the Debtor for a period of five years. (Plaintiff's Exh. # 1 and # 2). Although after the conversion of the case the Trustee was granted an extension of time to assume or reject these leases, the Trustee failed to either accept or reject. As a result, these leases are deemed to have been rejected as of December 1, 1981 pursuant to § 365(d)(1) of the Bankruptcy Code. In due course, Dolphin filed a claim for the damages allegedly suffered as the result of the breach of these leases. However, this claim is not before the Court at this time but rather Dolphin's claim for administrative expenses resulting from the use of the plane from the date of filing, January 14, 1980 through December 1, 1981, the date when the leases were rejected. The items claimed as administrative expenses are as follows: Price of replacement parts—$114,-383.26; labor to install—$62,486.00; attorneys fees and costs incurred by Dolphin during the bankruptcy proceeding and time differential payments pursuant to the lease —$21,055.00. The Debtor stipulated to the allowance of the claim as it pertained to time differentials and the parties agreed to address the elements of attorneys fees and costs claimed upon motion and hearing at a later date. The only contested element of this claim of Dolphin to be addressed at this time is the price of replacement parts and labor required to install them.

The record reveals that the Debtor and Dolphin performed according to the terms of the leases until January 14, 1980 when the Debtor filed its Petition under Chapter 11 of the Bankruptcy Code. In December of 1980, as part of the Debtor's reorganization efforts, the previous management was removed and Stempler became president of

the Debtor and remained in that position until the case was converted to a Chapter 7. On September 10, 1981, the Chapter 11 case was converted to a Chapter 7 case due to the inability of the Debtor to proceed with its efforts to achieve reorganization. The Debtor continued to make minimum rent payments to Dolphin from the time of its initial filing through December 1, 1981 when the lease was rejected by operation of law. It is without dispute that while Stempler was in control of the Debtor's affairs, parts were removed from Dolphin's Martin 404 plane, I.D. No. N258, and placed in other planes used by the Debtor.

The record further reveals that the other Martin 404 plane, I.D. No. N255, was flown by the Debtor throughout the period in which the Debtor was in Chapter 11 and was also used by Stempler's other company, SIA, after the case converted to Chapter 7. The Martin N258 was damaged in an accident in Sarasota during the Chapter 11 case and was flown to Sekman Aviation in Miami for repairs in April of 1981. On November 5, 1981, both planes were returned to Dolphin. The Martin N255 was returned in a flyable condition, although not certifiable. It was ultimately repaired and sold. The Martin N258 was not flyable and was not repaired. The evidence is uncontroverted that while Stempler did not specifically direct or authorize that parts be removed from the two Martins and installed in his own aircraft (ultimately increasing the liability to Dolphin), he was well aware that the practice of cannibalizing one aircraft by removing parts to benefit another aircraft continued and Stempler made no effort to discontinue the practice. There is no question that the practice was carried on in order to benefit SIA, at the expense of the Debtor, and, ultimately, to the detriment of Dolphin.

It is against the foregoing facts, as revealed by the record, that the Court must consider each element of the administrative claim filed by Dolphin. The first element claimed is the cost of parts removed and needed to replace those allegedly missing from the two Martins when they were ultimately returned to Dolphin. Dolphin's burden of proof in relation to the missing parts was clearly spelled out by this Court's Order Clarifying Order Continuing Plea (sic)/Trial Conference Entered December 26, 1984, dated March 28, 1985. In that order, the Court reiterated Dolphin's responsibility to prove that there were parts missing upon the return of the aircraft by the Debtor to Dolphin and to prove the number and complete description of each and every one of those parts and the value of same.

In support of this element of its claim, Dolphin submitted an itemized parts list together with completely overhauled or replacement values for each part totalling $114,383.26. While admitting that there were some parts missing from the two Martins returned to Dolphin, the Trustee vigorously contests the valuation of the missing parts asserted by Dolphin on several grounds; the Trustee first contends that the itemized list of forty-eight missing parts compiled by Charles Eddy, an employee of Marco Island Airways Repair Station, on January 27, 1982 (Plaintiff's Exh. # 3), should be refused by this Court as unreliable evidence of the parts which were actually missing when the Debtor returned the aircraft to Dolphin because the list of missing parts compiled by the same Mr. Eddy on November 18, 1981 immediately upon delivery of the aircraft to Dolphin, is substantially different from the January list and reveals numerous discrepancies between the two inventories.

The Trustee next contends that in any event the evidence presented by Dolphin's in support of its claim is insufficient in that it fails to include an allowance for use time remaining on major aircraft parts despite the fact that the Cardex System was available to Dolphin which would have provided that information. As a result, the Trustee contends that Dolphin is not entitled to the damages it seeks but its damages should be allowed only to the extent of the reasonable value of the missing parts; the Cardex System establishes the hours each part has been used, in other words the remaining life on the part, and if no time can be

established using the Dolphin Cardex System with reference to a specific missing part, then it is presumed that the time or life has expired and only the "core value" remains. The evidence presented by experts established that it is an acceptable industry standard that the value of core parts is 30% of the cost of new replacement parts.

■ This Court previously held that one specific issue to be determined in this adversary proceeding was whether parts were missing upon the return of the two Martin 404 aircraft by the Debtor to Dolphin, specifically, the number and complete description of each and every one of those missing parts. Having considered the record on this point, the Court is satisfied that the November 18, 1981 inventory (Trustee's Exh. # 1) prepared by Mr. Eddy is more credible, reliable and accurate, simply because the inventory of Mr. Eddy dated January 27, 1982 (Plaintiff's Exh. # 3) was prepared with an eye toward litigation and, therefore, is less reliable and for obvious reasons, less credible. Based on the foregoing, for the purposes of damages assessment, this Court will use the November 18, 1981 inventory for purposes of assessing damages for the missing parts.

■ In light of effect that this Court already rejected the general schedule prepared by Mr. Eddy, from that it logically follows that the Court must also reject the value of the missing parts stated by Mr. Eddy, which values were allocated by Mr. Eddy to the parts listed on the general schedule. This being the case, since there is no evidence of the reasonable costs for replacement of the specific missing parts, including the cost of installation of the parts listed on the November schedule, nor does the record indicate the amount of 30% credit to be allocated for the "core value" of the missing parts, which also could have been determined by the Cardex System which is an acceptable custom and practice in the airline industry, an evidentiary determination must be made in an additional evidentiary hearing. This additional hearing shall be for the limited purpose of producing evidence on the reasonable costs of replacement parts, including primary installation, and to determine which missing parts have only a "core value" and the time remaining on the other missing parts with specific reference to the Cardex System using the November 18, 1981 inventory.

The rule of damages applicable to Dolphin's claim in this case is succinctly stated in the Restatement of Torts, § 928 (1939):

> Where a person is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for
>
> (a) the difference between the value of the chattel before the harm and the value after the harm *or, at the plaintiff's election,* the reasonable cost of repair or restoration where feasible, with due allowance for any difference between the original value and the value after repairs and
>
> (b) the loss of use

(Emphasis added). *See McMinis v. Phillips,* 351 So.2d 1141 (Fla. 1st DCA 1977); *Airtech Service, Inc. v. MacDonald Construction Co.,* 150 So.2d 465 (Fla. 3d DCA 1963).

■ Applying the foregoing to the record as developed, this Court concludes that damages to Dolphin occurred and must be awarded to Dolphin based on the determination of the exact amount established during the additional evidentiary hearing to be held. Having concluded that the Debtor's estate is liable to Dolphin for this undetermined amount of damages and the next step is to consider the Trustee's claim for indemnification of the Debtor's estate by Stempler and SIA.

■ It should be noted initially that there is no dispute as to Dolphin's claim for $21,055.00 for time differentials for time elapsed on the major components of the two Martin 404 aircraft since the inception of the two leases. (Plaintiff's Exh. # 6). The Debtor's estate received the direct benefits of these leases and Stempler and SIA need not indemnify the estate for this portion of Dolphin's claim. Also, the Trustee

was credited with $5,737.00 for parts returned to Dolphin (Trustee's Exh. # 2) and this amount must be equally deducted from any indemnification award if one is granted.

As noted earlier, on June 19, 1986, this Court granted the Trustee's Motion to Amend the Pleadings to Conform to the Evidence. This Court granted the Motion pursuant to Federal Rules of Civil Procedure 15(b) having concluded that to grant a motion would not be prejudicial to Stempler or to SIA. *See Corsica Livestock Sales, Inc. v. Sumitomo Bank of California,* 726 F.2d 374 (8th Cir.1984). In Count I of his complaint, the Trustee sought damages for conversion and indemnification against Stempler and SIA. Count II of the Trustee's Complaint has been settled by stipulation between the parties. Count II was an action against SIA for damages for use of property of the estate. Under the terms of the agreed settlement, SIA is indebted to the Trustee in the amount of $13,407.78 for damages sustained.

■ The original theory of liability advanced by the Trustee against Stempler and SIA was based on conversion. A conversion is defined as an "act of dominion wrongfully asserted over another's property inconsistent with this ownership therein." *In re Dino,* 17 B.R. 316, 318 (Bankr. M.D.Fla.1982); 12 Fla.Jur.2d, *Conversion and Replevin,* § 1 (1979). Therefore, in order for the Trustee to prevail against Stempler and SIA, the Trustee has the burden of establishing each of the following elements: (1) an act of dominion over another's property performed by Stempler and SIA; (2) the wrongfulness of the act; (3) the specific identity of the property allegedly converted; and (4) the Trustee's deprivation of its possessory interest in the property. This record fails to support the findings that the Trustee met his burden.

First, Stempler performed no act amounting to an assertion of direct control over the parts at issue. Stempler never physically removed any parts himself, and he gave no instructions concerning the removal of the parts. This fact is dispositive since "some affirmative act is essential to conversion; nonfeasance does not suffice." *In re First State Securities Corp.,* 34 B.R. 492, 496 (Bankr.S.D.Fla.1983); *see also* Restatement·(Second) of Torts, § 224 (1965). The Trustee has failed to establish such an affirmative act on the part of Stempler and SIA. Therefore, the Trustee's claim, levied on conversion set forth in Count I, cannot be sustained.

Considering next the amended claim of the Trustee against Stempler based on an alleged breach of fiduciary duty, it should be noted at the outset that Stempler was the President and a Director of the Debtor and also the President of SIA during the period of the Debtor's continued operation under Chapter 11. Stempler, as President and a Director of the Debtor bore "essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession." *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 1995, 85 L.Ed.2d 372 (1985) (*citing Wolf v. Weinstein,* 372 U.S. 633, 649–52, 83 S.Ct. 969, 979–81, 10 L.Ed.2d 33 (1963). "Indeed, the willingness of courts to leave debtors in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." *Id.,* 105 S.Ct. at 1995 (*quoting Wolf v. Weinstein,* 372 U.S. 633, 651, 83 S.Ct. 969, 980, 10 L.Ed.2d 33 (1963). "A debtor in possession holds its power in trust for the benefit of the creditors. The creditors have the right to require the debtor in possession to exercise those powers for their benefit." *In re Martin Custom Made Tires Corp.,* 108 F.2d 172, 173 (2d Cir.1939); *see In re Kovacs & Co., Inc.,* 16 B.R. 203, 205 (Bankr.D.Conn.1981). "Additionally, a debtor in possession, like a trustee, is a fiduciary of each creditor of the estate. As such, it must exercise that measure of care that an ordinarily prudent person would exercise under similar circumstances." *In re Roblin Industries, Inc.,* 52 B.R. 241, 243 (Bankr.W.D.N.Y.1985) (citations omitted).

■ Stempler as President and a Director of the Debtor is charged with the knowledge and responsibility for the actions of his employees. Stempler knew the practice of the employees of both the Debtor and contract maintenance firm removed parts from one aircraft and installed them in another aircraft when replacement parts were not readily available from the Debtor's parts inventory. Although Stempler may not have directed, instructed or otherwise indicated that the aircraft he owned which were leased to the Debtor be preferred in the maintenance process, Stempler was aware that parts were being moved between aircraft and that replacement parts were not being procured. For example, in response to questioning at Stempler's deposition, he answered:

"Yes. I was told that parts from Dolphin Leasco airplanes were placed on airplanes that I owned, as well as parts from Dolphin Leasco airplanes went onto other Dolphin Leasco airplanes, as well as parts from my airplanes went on Dolphin Leasco airplanes." (Plaintiff's Exh. # 5, at 54).

It should be noted that removal of parts from one aircraft and placement on another aircraft is a common industry practice, but a replacement part should be immediately ordered for installation on the aircraft from which the part was removed. As President of the Debtor, Stempler was responsible for the actions of his employees and was in a position to require the necessary replacement parts to be ordered. Stempler is charged with the knowledge that replacement parts for those removed from one aircraft and installed in another aircraft were not ordered or reinstalled on the aircraft from which the part had been removed.

■ Stempler knew or should have known that at the time the Debtor ceased operation that the two Martin 404 aircraft leased from Dolphin were not complete and could not be returned to Dolphin in the condition required by the lease. At the cessation of the Debtor's operation, Stempler received his aircraft back in operating condition, capable of generating income for Stempler and SIA. This activity by Stempler exposed the estate to significant additional liability to Dolphin. Therefore, this Court finds that Stempler knew and consented, at least impliedly, to removal of the aircraft parts from the two Martin 404 aircraft leased from Dolphin. Moreover, Stempler was responsible for or had knowledge of the "cannibalization" which was under his supervision and control. As a result, Stempler breached his fiduciary duty to the Debtor's estate and is thereby liable for damages to the Debtor's estate which have resulted and said amount will be determined at the additional evidentiary hearing.

■ At the time Stempler became President and a Director of the Debtor, the Debtor was only operating the two Martin 404 aircraft leased from Dolphin. Stempler was also President of SIA during this period of time when the "cannibalization" occurred with respect to the Dolphin aircraft and this benefitted SIA as the parts were placed on aircraft in the SIA fleet. In addition, the record also reveals that the Debtor subleased these two Dolphin aircraft to SIA with the consent of the lessor, Dolphin. Apparently, Stempler agreed to this sublease on behalf of SIA (Plaintiff's Exh. # 5, at 18). SIA paid the Debtor for use of *both* aircraft from August 8, 1981 through November 30, 1981; it should be noted that the Martin N258 could not be operated during this time (Plaintiff's Exh. # 15, at 17–18).

Stempler's testimony is especially noteworthy with respect to the continuation of lease payments to Dolphin after the Chapter 7 conversion and the lease termination obligations of the two Dolphin aircraft. In response to the question why SIA paid the Debtor for the non-operable Martin N258 Dolphin aircraft, Stempler stated:

"The reason was that they continued to pay—it was the expectation of [SIA] that the repair would be completed, that [SIA] or Florida Airlines would return all the parts that had been removed, and that 258 would be returned to flying status

and would be continued to be used by [SIA], pursuant to the sublease agreed to by Florida Airlines and Dolphin Leasco. This was the intent to return this airplane to flying service." (Plaintiff's Exh. # 5, at 56–57).

This evidence of SIA's activities in conjunction with Stempler's breach of fiduciary duty to the Debtor's estate mandates that this Court apportion the liability for replacement parts and labor for primary installation between Stempler and SIA. In sum, Stempler and SIA are jointly and severally liable to the Debtor for damages in this proceeding which are to be determined in an additional evidentiary hearing.

In order for the Trustee to obtain a recovery for the Debtor's estate and SIA for indemnification of damages, it must be determined that certain specific, identified parts were missing from the returned aircraft. This issue has been addressed and the missing parts have been specifically identified by the November 18, 1981 inventory. The principles of equity have fashioned the remedy of indemnification. Moreover, "the right of indemnity depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others are compelled to pay damages that ought to have been paid by the wrongdoer, they may recover from him." 12 Fla.Jur.2d, *Contribution, Indemnity, and Subrogation*, § 14 (1979).

In sum, this Court is satisfied that Dolphin suffered damages as the result of the missing parts of the two Martin 404 aircraft leased to the Debtor when they were returned, therefore, the estate of the Debtor is liable for the damages to Dolphin, in an amount to be determined and both Stempler and SIA are jointly and severally liable for the damages to the estate of the Debtor and must indemnify the estate for the damages Dolphin sustained.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Dolphin is entitled to an allowance to be charged as cost of administration of the Chapter 11 case to be treated pursuant to the distribution procedures of Chapter 726(b). It is further

ORDERED, ADJUDGED AND DE-CREED that David Stempler and Southern International Airways, Inc. be, and the same are, hereby jointly and severally held liable for the amount to be determined and paid by the estate of the Debtor. It is further

ORDERED, ADJUDGED AND DE-CREED that the final evidentiary hearing shall be scheduled and held before the undersigned on Dec. 12, 1986 at 9:15 a.m. to receive additional evidence to determine the amount of reasonable costs of replacement parts, including primary installation, and which missing parts have only a "core value" and for the time remaining on the other missing parts to be determined with specific reference to the Cardex System on the 12 day of December, 1986 at 9:15 a.m.