579 So.2d 255 (1991)
SUN BANK/MIAMI, N.A., As Personal Representative of the Estate of Toby Saewitz, Appellant,
v.
Max Paul SAEWITZ, Appellee.
No. 88-2185.
District Court of Appeal of Florida, Third District.
April 30, 1991.
Fromberg, Fromberg and Lewis and Elsa Alvarez, Miami, for appellant.
Allison Doliner Hockman, Coral Gables, for appellee.
Before FERGUSON, COPE and LEVY, JJ.

ON MOTION FOR REHEARING
LEVY, Judge.
Sun Bank/Miami, N.A., as personal representative of the estate of Ms. Toby Saewitz, appeals from a final judgment in favor of the plaintiff, Max Paul Saewitz, in an action to recover money lent. We affirm.
The plaintiff, who is the son of the decedent Toby Saewitz, brought an action against Sun Bank, personal representative of the decedent mother's estate, to recover money the son allegedly loaned to his mother. Attached to the complaint as an exhibit, was a check for $100,000 payable to the decedent, signed by the plaintiff son's wife, *256 and drawn on their joint account. The word "loan" appeared on the check, and the plaintiff alleged that the check was a loan to his mother, with whom he had a business relationship. Both parties stipulated that the plaintiff and his wife were interested parties.
At trial, and over the defendant's objections, the check and testimony by the plaintiff and his wife, that the check was a loan to the decedent, were admitted into evidence. The trial court denied Sun Bank's motion for a directed verdict based on the insufficiency of the evidence, and entered a final judgment in favor of the plaintiff in the amount of $100,000.
Sun Bank first argues that the trial court committed reversible error in allowing the check payable to the plaintiff's mother to be introduced into evidence and cites to Stebnow v. Goss, 165 So.2d 251 (Fla. 2d DCA 1964). In Stebnow, the Second District held that cancelled checks drawn by the plaintiff to the order of the decedent, which bore no inscription or other evidence indicating the purpose for which they were given, were insufficient to establish a claim of indebtedness on the part of the decedent. The court indicated that an objection to the introduction of the check should have been sustained stating that:
Checks in short, are used for divers purposes other than the advancement of loans. So reasonable prudence, especially in the case of an unsecured loan, demands a clear evidence of the debt to meet the contingency of the Dead Man's Statute and guard against presumption from circumstances which otherwise might be inconsistent with a claim of indebtedness. An ordinary cancelled check is not per se indicative of a debt of the payee to the drawer.
Stebnow, 165 So.2d at 253-54 (emphasis added). By contrast, in the present case the check to the plaintiff's decedent mother was not "ordinary" because it contained the inscription "loan" on its face and was endorsed without restriction. Under these circumstances, the check did constitute a writing which evidenced an indebtedness, sufficient to overcome the ordinary presumption to the contrary, and to allow its introduction into evidence.
Furthermore, we note that the Stebnow case was decided prior to the 1976 revisions to the Deadman's Statute, which revisions became effective on July 1, 1978. The prior statutory language, contained within Section 90.05 of the Florida Statutes, prohibited interested persons from acting as witnesses regarding "transactions" and oral communications between the interested person and the deceased. The post-revision language contained in Section 90.602, Florida Statutes (1984), prohibits such testimony only insofar as it concerns oral communications. It omits the language regarding "transactions". As recognized in Section 90.602 at the Law Revision Council Note  1976:
This section, commonly known as the "Deadman's Statute," provides protection for the estates of the deceased and the insane by making certain interested persons incompetent to testify in an action against the estate regarding oral communications with the deceased or insane person. Existing Fla. Stat. § 90.05 is substantially restated and the same class of persons are protected. However, the section is applicable only to "oral communications" and not to "transactions" because of problems that have arisen therewith.
We are also not persuaded by Sun Bank's second argument for reversal, that the trial court committed reversible error in admitting the testimony of the interested plaintiff and his wife regarding the transaction. As noted above, Section 90.602 only excludes testimony that refers to conversations between an interested party and a deceased person. It does not exclude testimony by an interested party regarding written transactions or written communications with a deceased person. Hulsh v. Hulsh, 431 So.2d 658 (Fla. 3d DCA 1983). Thus it was not error for the trial court to admit testimony by the plaintiff and his wife regarding the terms of the transaction. Questions of the weight, sufficiency, and credibility of the properly submitted testimony and the other evidence were matters *257 correctly for the trier-of-fact to determine, and we find that there was substantial competent evidence to support the judgment below.
Accordingly, having found that the trial court was eminently correct in entering the judgment below, we affirm.
Affirmed.
COPE, Judge (specially concurring).
The question presented is the proper interpretation of the Dead Man's Statute as applied in this case. The Dead Man's Statute is an exception to the general rule that a witness is qualified to testify in a proceeding, even though having an interest in the action. See generally C. Ehrhardt, Florida Evidence § 602.1 (2d ed. 1984). The harsh results which can stem from application of the Dead Man's Statute have been well documented, id., and accordingly under Florida law "the language of the Dead Man proviso should be strictly construed and limited to its narrowest application." Farley v. Collins, 146 So.2d 366, 368 (Fla. 1962); see Day v. Stickle, 113 So.2d 559 (Fla. 3d DCA 1959).
The bank asserts that the judgment must be reversed on authority of Fabian v. Ryan, 486 So.2d 10 (Fla. 3d DCA), review denied, 494 So.2d 1150 (Fla. 1986), cert. denied, 479 U.S. 1096, 107 S.Ct. 1313, 94 L.Ed.2d 167 (1987). That contention is a substantial one. In that case Fabian entered into a lease with option to buy. The document was missing the material terms and conditions of the option to buy. After the demise of the decedent, Fabian sought to exercise the option and to establish the terms and conditions of the option through parol evidence. This court held that the Dead Man's Statute excluded the proffered testimony which, in the absence of a writing, would have necessarily entailed testimony of an oral assent by the decedent to the terms and conditions of the option.
In the present case Max Saewitz made his claim against the decedent's estate based on the check bearing the notation "loan." The check had been negotiated by the decedent and the funds were deposited in the decedent's account. The "loan" notation was certainly susceptible of the interpretation that the $100,000 amount was a loan to the decedent, although the other possibility explored at the evidentiary hearing below was that the check was the repayment of an amount loaned by the decedent to Max Saewitz. Saewitz' complaint proceeded alternatively on the theory of money lent and unjust enrichment.
The trial court excluded all testimony about conversations with the decedent. The court permitted testimony about the execution, delivery and negotiation of this check; testimony about past lending transactions between Saewitz and the decedent; testimony that Saewitz was not indebted to the decedent at the time of her demise; and testimony that the check did not represent a gift. See Broward Nat'l Bank v. Bear, 125 So.2d 760, 762 (Fla. 2d DCA 1961) (pre-Evidence Code case; testimony as to payment or nonpayment of an obligation is testimony concerning a "transaction"); Small v. Shure, 94 So.2d 371, 375 (Fla. 1957) (pre-Evidence Code case; evidence of signature not precluded by Dead Man's Statute); Hulsh v. Hulsh, 431 So.2d 658, 663-64 (Fla. 3d DCA) (evidence of nonverbal conduct, such as delivery of document, not barred by Dead Man's Statute), review denied, 440 So.2d 352 (Fla. 1983). The trial court entered judgment in Saewitz' favor for the $100,000 principal amount.
In my view the trial court's interpretation was consistent with the Dead Man's Statute, construed in light of the rule of construction set forth in Farley v. Collins. Here there was a written transaction which had been partially completed. The writing (in the form of a check with the notation "loan") and the transfer of funds effected by the check, along with the testimony described above, were sufficient to establish the loan of the principal amount of $100,000 and an entitlement to repayment of same. In Fabian v. Ryan, the material terms were missing from the option agreement and there was no way to establish them except through statements of assent by the decedent. In Fabian there was a writing entitled "option" but the document did not contain the material terms. It was *258 necessary to resort to parol evidence to establish whether there had ever been a meeting of the minds at all.
The interpretations reached by the trial court and set forth in the majority opinion correctly interpret the amended Dead Man's Statute.
FERGUSON, Judge (dissenting).
Finding the Deadman's Statute a bar to a critical communication regarding an omitted contract term, the appellee simply went through the back door with inferences to be drawn from testimony of his dealings with the deceased in this and other transactions. We have addressed this question in two earlier opinions of this court: Fabian v. Ryan, 486 So.2d 10 (Fla. 3d DCA), rev. denied, 494 So.2d 1150 (Fla. 1986), cert. denied, 479 U.S. 1096, 107 S.Ct. 1313, 94 L.Ed.2d 167 (1987), and Hulsh v. Hulsh, 431 So.2d 658 (Fla. 3d DCA), rev. denied, 440 So.2d 352 (Fla. 1983).
There is no written contract, however, it is agreed that the "loan" notation on the check is evidence that a loan was made. It is also agreed that the notation on the check does not answer the main question, that is, whether the decedent, rather than the appellee, was the borrower. Evidence as to the execution, delivery, and negotiation of the check added nothing to a resolution of that question. The remainder of the evidence, produced by counsel in the course of his examination, fails the test for competency.
The Saewitzes were asked by their attorney the leading question whether Saewitz was indebted to the decedent, to which both parties responded "no". The follow-up leading question presented to Mrs. Saewitz was whether there was an intent to make a gift to the deceased, to which the response again was "no". By those questions and answers it was inferred, inescapably, that there was an agreement between Saewitz and the deceased whereby the deceased assented to borrow $100,000 from Saewitz with the understanding that it would repaid. In the absence of further transactional evidence, it is obvious that Saewitz is relying on an assent of the deceased made in an oral communication.
The testimony needed by Saewitz to prove his case was more than "whether there was a meeting of the minds," as stated in the concurring opinion. The pertinent inquiry is what did the parties intend when their minds met. Without the inferences to be drawn from the leading questions, there is no evidence concerning a material contract term, i.e., who, as between the appellee and the deceased, was the borrower.[1]
Our opinion in Fabian v. Ryan is not distinguished by the majority. There we held that where the inescapable inference from the testimony of an interested party would show that the decedent agreed to a material term or condition which is missing from the written contract, the testimony would violate the Deadman's Statute, section 90.602. See also Hulsh v. Hulsh, 431 So.2d 658, 664 n. 3 (Fla. 3d DCA 1983) ("[w]here the inescapable inference from the witness's testimony is that the decedent made certain statements to the witness, the testimony is an oral communication within the Deadman's Statute as much as when the witness testifies to the actual statements made by the decedent.").
I would deny rehearing and adhere to the original opinions.
NOTES
[1] Appellee, Max Saewitz, is a beneficiary under a joint trust created by his mother and his stepfather, Benjamin Saewitz, who predeceased his mother. Max, his mother's only child, was not adopted by Ben Saewitz. The other trust beneficiaries are the children of Benjamin by a prior marriage. Kirschner & Saewitz v. Fromberg, as Trustee of the Estate of Saewitz (Case No. 88-1022, Fla. 3d DCA 1989), 14 F.L.W. 2073, opinion vacated. The effect of the majority ruling is to reduce the trust by $100,000 in favor of the appellee, to the detriment of the stepfather's children.