PETERSON, J.
Donald C. Bauerle, Jr., as Personal Representative of the Estate of Donald C. Bauerle, Sr. (Bauerle), initiated action' against Janet C. Brush on a $50,000 promissory note dated April 4, 1995 payable to Donald C. Bauerle, Sr. (Decedent). Brush affirmatively pled lack of consideration alleging that the Decedent had made a gift to her of the money evidenced by the note and never intended to enforce the note.
At trial, Bauerle introduced the note into evidence, testified only as to the amount due under it, and exercised caution in order to avoid waiving the Dead Person’s Statute which provides:[1]
90.602 Testimony of interested persons.—
(1) No person interested in an action or proceeding against the personal representative, heir at law, assignee, legatee, devisee, or survivor of a deceased person, or against the assignee, committee, or guardian of a mentally incompetent person, shall be examined as a witness regarding any oral communication between the interested person and the person who is deceased or mentally incompetent at the- time of the examination.
It was only Brush’s cross-examination of Bauerle that elicited the following information which was harmful to her case. The Decedent told his son in April, 1992, that he was loaning money to Roger Torri, Brush’s son from a previous marriage, to start a business and that the source of the money was a certificate of deposit (CD) issued by NationsBank in North Carolina. The CD had been created in joint names with right of survivorship by the Decedent and Brush from their separate funds.
Brush then called Bauerle as her witness and elicited testimony that in Decem *312 ber, 1992, Bauerle and the Decedent sold a heating and air conditioning supply business and covenanted with the purchaser not to compete for a period of five years. Bauerle advised the Decedent that by loaning the money to Torri to start a similar business, he could be violating the terms of the non-compete agreement. Bauerle and the Decedent then devised a plan to avoid violation of the non-compete agreement whereby two notes were prepared. One note was for $50,000 naming Brush as maker and the Decedent as payee. The second note was for $100,000 naming Torri as maker and Brush as payee. Bauerle insisted that his deceased father never intended to make a gift.
Brush then testified that she married the Decedent in 1977 and during the term of the marriage, the Decedent gave her an allowance of approximately $6,000 per month and occasionally, additional amounts of three or four thousand dollars. They maintained both joint and individual bank accounts during the marriage. Roger Torri told her that he was starting an air conditioning and heating business in March, 1995, and she gave him $100,000 to assist him in his new venture. The source of the money was from the proceeds of a CD issued by a North Carolina bank and established equally by the Decedent and herself six months earlier. On March 9, 1995, the Decedent and Brush prepared written instructions to the bank that issued the CD asking it to deposit the proceeds into Brush’s account that was also maintained at the same bank. The CD matured on April 3, 1995, and the bank deposited the proceeds into Brush’s separate account as instructed earlier. On that same day, Brush disbursed the $100,000 to her son.
The following testimony was proffered by Brush after Bauerle invoked the prohibitions of the Dead Person’s Statute. The Decedent gave her the note to sign two or three weeks after she disbursed the $100,000' to her son. At that time, the Decedent told her that he wanted Brush to sign the note only because of the non-compete clause and by signing it would get him off the hook. When asked by her counsel, Brush said that the Decedent told her that she would not have to pay it back and the “object of it was because of this non7compete, if something should come up with that.” No other conversations about the note took place before the Decedent died in August, 1995, approximately four months after Brush signed the note. According to Brush, the Decedent had been with her in North Carolina when the funds were deposited into her account and disbursed to her son. Brush then ended her testimony by telling the court that she received $1.8 million from the sale of the marital residence and receives $12,155.06 per month for life with a yearly increase of five percent from a trust established by the Decedent.
It was only from this testimony and the supporting exhibits that the trial court found that:
1. The Defendant, Janet C. Brush, formerly Janet C. Bauerle’s (“Janet Brush”), defenses to Plaintiffs Complaint are essentially lack of consideration, gift, and waiver.
2. There is no testimony of any history in the relationship between Defendant, Janet C. Brush, formerly Janet C. Bauerle (“Janet C. Brush”), and her deceased husband, Donald C. Bauerle, Sr., of any type of loan transactions. To the contrary, the evidence demonstrates a consistent level of support of a very substantial amount by Donald C. Bauerle, Sr. for his wife, Janet Brush.
3. The Promissory Note was created to protect against a covenant not to compete rather than a note representing an *313 actual loan by Donald C. Bauerle, Sr. to Janet C. Brush.
If Bauerle’s contention is correct that the Dead Person’s Statute excludes Brush’s version of oral conversations with the Decedent, we can find no support in the record for the trial judge’s conclusion that the promissory note was- created to protect against a covenant not to compete rather than representing an actual loan by the Decedent to Brush because it was only the proffered testimony of Brush that supports that conclusion. We note that the trial court’s finding that the lack of history of loans from the Decedent to Brush does not support the idea that a gift was intended. It does not logically follow that a gift was made because there was no history of loans between husband and wife. The transaction when collapsed shows that the loan was being made to Torri. There was no testimony that a large gift of $50,000 was ever made during the marriage, nor that loans of $100,000 had ever been made to relatives. If the Decedent wanted to make a gift to Brush, he could do so without any consequences flowing from the existence of a covenant not to compete, just as he had done during the entire marriage. According to Brush, he had been making cash gifts to her throughout the marriage, although in smaller amounts. Finally, we observe that the interest payments on the Torri note were payable monthly and those on the Brush note were made quarterly which would allow Brush to receive interest payments from Torri before having to make payments on the note to the Decedent. We also observe that when the $50,000 principal was due on the Brush note, Brush would have received $60,000 on the Torri note,- enough to repay the Decedent without depleting her funds.
Brush argues that when Bauerle placed the promissory note in evidence, the protection of the Dead Person’s Statute was waived. Section 90.602(2)(b), Florida Statutes provides:
(2)- This section does not apply when:
(a) A personal representative ... is examined on his or her own behalf regarding the oral communication.
(b) Evidence of the subject matter of the oral communication is offered by the personal representative.... [2]
Continuing, she argues that because the promissory note was the subject matter of the oral communication and was placed in evidence by Bauerle, á waiver of the protection of the Dead Person’s Statute occurred. We disagree, the personal representative in this case is not the proponent of the oral communication. During his case in chief, Bauerle merely introduced the promissory note, written evidence of a transaction in which no oral communication is necessary. The maker of the note can simply sign and deliver the note to the promisee without any communication and Bauerle did not advance the theory that any oral communication was necessary. It was later in the trial, during Brush’s presentation of her defenses, that the attempt was made to present evidence of an oral communication occurring between the Decedent and herself in order to avoid responsibility under the note by asserting that it was a gift and that no liability attached to it.
If we were to adopt the idea urged by Brush that the mere introduction of a promissory note waives the bar of the Dead Person’s Statute,[3] a personal repre *314 sentative could never seek the statutory protection except to raise it in defense of a claim based upon an oral communication. We do not believe that the drafters of the statute intended that result.
Brush relies on Stetzko v. Coleman, 714 So.2d 1087 (Fla. 4th DCA 1998) in support of her theory that an interested person may testify as to an oral communication when the deceased person’s personal representative has offered evidence- of the subject matter of the oral communication. In Stetzko, the decedent’s children filed a complaint alleging that the defendant used undue influence and duress to cause the decedent to make intervivos transfers of assets into her name. The. children introduced evidence of intervivos transfers during trial including bank records, life insurance beneficiary designations, and deeds to real property. They also called the defendant and questioned her about these matters omitting any inquiries about oral communications with the decedent. The trial court then allowed the defendant and her husband to testify about oral communications with the decedent ruling that the children had waived the protection of the Dead Man’s Statute having introduced the documentary evidence of the subject matter of the oral communication.
We do not believe that Stetzko is dispositive of the instant case. Here, the personal representative merely had the negotiable promissory note admitted into evidence with testimony as to the amount due calculated under the terms of the face of the instrument. No evidence was introduced by Bauerle of the subject matter of the oral conversation between the Decedent and Brush whereby the alleged gift was being made. In Stetzko, the children had to present extensive testimony as to the alleged improper transfers and the improper methods used to gain the transfers in order to support their assertion of undue influence on the decedent. Where the inescapable inference from an interested party would show that the decedent agreed to a' material term or ‘ condition which is missing from a written contract, the testimony would violate the Deadman’s Statute. See Fabian v. Ryan, 486 So.2d 10 (Fla. 3d DCA 1986); Hulsh v. Hulsh, 431 So.2d 658 (Fla. 3d DCA 1983).
Two district courts have considered the Dead Person’s Statute since its revision in 1976. See Sun Bank/Miami, N.A. v. Saewitz, 579 So.2d 255 (Fla. 3d DCA 1991); Carpenter v. Wemyss, 638 So.2d 592 (Fla. 4th DCA 1994). Both agree that the statute prohibits interested persons from testifying about oral communications between the interested person and the decedent, but an interested person is not prohibited from testifying regarding written communications or written transactions with the decedent. Testimony regarding nonverbal conduct, such as execution, delivery, and negotiation of a contract, is not barred. In the instant case, Bauerle merely testified about the written transaction and introduced the written transaction, the note, during his case-in-chief. It was Brush who elicited from Bauerle the oral communications' between Bauerle and the Decedent, that was so harmful to Brash’s case and it was Brush who attempted to testify *315 about the Decedent’s alleged oral statement that the promissory note that she was signing would not be enforced.
We reverse the final judgment finding the promissory note to be unenforceable and remand for the purpose of determining the amounts due under the note and direct the court to enter judgment in favor of Bauerle as personal representative.
REVERSED; REMANDED.
GRIFFIN and SAWAYA, JJ„ concur.

. Fla. Stat., § 90.602(1) (2000).

. We note that the Law Revision Council failed in achieving clarity when it drafted section 90.602(2)(b). Professor Ehrhardt similarly noted that the "meaning of the pr.ovi-sión is unclear” in his treatise on Florida Evidence § 602.1 (2001 ed.).

. Although the issue of the introduction of a promissory note constituting a waiver was *314 never directly discussed, a mortgage was successfully foreclosed by co-personal representatives in Polk v. Crittenden, 537 So.2d 156 (Fla. 5th DCA 1989). The issue relating to the same sub-section of the Dead Person’s Statute under review subjudice involved the personal representatives’ introduction of part of a deposition that indicated that the promisors only support for his assertion of the absence of personal liability was an oral agreement with the decedent. We ruled that the introduction was not a waiver and the only purpose of the introduction was to show that the obligor' on the note could not establish a defense except through testimony about oral communications with the Decedent.