[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11004
Non-Argument Calendar

_____

D.C. Docket No. 0:15-cv-62078-FAM

CHRISTINA CIMAGLIA,
individually,

Plaintiff-Appellant,

versus

MATTHEW A. MOORE,
individually,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 30, 2018)

Before WILLIAM PRYOR, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Christina Cimaglia appeals the district court's grant of summary judgment in favor of Matthew Moore on her claims for unjust enrichment and money lent under Florida law. Cimaglia says that the $120,000 down payment she made for a house the two intended to share was a loan. Moore says, to the contrary, it was a gift, only to be paid back out of proceeds from the sale of the house that never materialized. After careful review, we affirm in part and reverse and remand in part.

## I.

Cimaglia and Moore met in 2000 and became romantically involved. In 2005, they decided to buy a house together in Florida. Because Moore had better credit, he applied for the mortgage solely in his name. Because Cimaglia had more liquid assets, she paid the $120,000 down payment. At the request of the mortgage broker, Cimaglia signed a Gift Certification, stating that $50,000 of the down payment was a gift to Moore, and "[t]here [was] no repayment expected or implied, written or verbal" by Moore. The house was jointly titled in both Cimaglia's and Moore's names.

A few months after buying the house, Moore lost his job and took a new position in Georgia. Cimaglia and Moore's relationship ended in 2008. Cimaglia

continued living in the couple's Florida home, while Moore lived in Georgia. Moore continued making payments toward the mortgage of the Florida property after the relationship ended. The Florida property was sold at a loss in 2015 with Moore paying over $10,000 to facilitate the closing.

Cimaglia says the $120,000 down payment she made on the Florida property was always intended as a loan. She says she only signed the Gift Certification because the mortgage lender required her to, and that she "did not consider the gift certification to contradict our private intention to make the $50,000.00" repayable. At some point after the relationship ended, Cimaglia asked that the $120,000 be paid back. And in a series of emails, Moore seemed to acknowledge that he owed Cimaglia for the down payment. In November 2008, he wrote "I owe you $120,000 but I don't have it all liquid right now." In August 2009, after an attorney they'd asked to help sort out their finances shared a draft settlement agreement, Moore responded "I do not see in this document any language related to repaying the downpayment of $120,000 to Christina. I would like to set this up to be repaid over a 10 year period if that is ok with Christina." In another August 2009 email he wrote "[y]ou will get the $120K back from me. Nothing at closing will reduce that." In April 2010, he wrote "I will repay her $120,000 over the next 6 years." And in fact, Moore made two payments for $20,000 and $15,000 to Cimaglia that he characterized as "repayment."

3

Cimaglia says Moore should be required to repay the $120,000 she spent on the down payment. After offsetting the $35,000 Moore already repaid her and an additional $5,000 in expenses Moore incurred for her, Cimaglia says Moore now owes her $80,000, plus interest and costs. Cimaglia filed suit in the U.S. District Court for the Southern District of Florida, with an amended complaint alleging claims under Florida law for fraud, unjust enrichment, and money lent. Cimaglia later stipulated dismissal of the fraud claim, and the district court granted summary judgment for Moore on the unjust enrichment and money lent claims. This appeal followed.

## II.

We review <u>de novo</u> a district court's grant of summary judgment, "viewing the record and drawing all factual inferences" in favor of the nonmoving party. <u>Mazzeo v. Color Resolutions Int'l, LLC</u>, 746 F.3d 1264, 1266 (11th Cir. 2014). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To create a genuine dispute as to a material fact, "[a] mere scintilla of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997) (quotation omitted and alteration adopted).

A.

Under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant[] to retain it without paying the value thereof." Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012). Recovery under a theory of unjust enrichment does not require the existence of an enforceable agreement, but instead looks to the underlying fairness of the conduct at issue. See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., 695 So. 2d 383, 386, 390 (Fla. 4th DCA 1997). "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." Am. Safety Ins. Serv., Inc. v. Griggs, 959 So. 2d 322, 331–32 (Fla. 5th DCA 2007).

The district court determined Cimaglia's unjust enrichment claim failed as a matter of law because even if Cimaglia could show that she conferred a benefit on Moore, "there is insufficient record evidence to show that it would be inequitable for the defendant to retain the benefit without paying the value." Specifically, the district court pointed out that Moore and Cimaglia jointly purchased the home,

5

both made mortgage payments, and neither received any proceeds from the house when it was sold. The court also highlighted that Cimaglia lived in the home without Moore for over six years, that Moore paid more than $10,000 to facilitate the sale, and that Moore effectively paid Cimaglia $40,000 after the house sold at a loss.

We agree with the district court that Cimaglia's unjust enrichment claim fails as a matter of law. The Third Restatement of Restitution and Unjust Enrichment specifically addresses the application of unjust enrichment to facts similar to these, saying that if one member of an unmarried couple has made "substantial, uncompensated contributions" to an asset of the other, "the person making such contributions has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship." Restatement (Third) of Restitution and Unjust Enrichment § 28 (Am. Law Inst. 2011). But the Restatement's unjust enrichment scenario is distinguishable from this case in two important ways. First, Cimaglia didn't make substantial, uncompensated contributions to Moore's asset. Rather, she provided a down payment for a house that she co-owned and lived in, even after her relationship with Moore ended. And second, even if the $120,000 down payment was a benefit conferred on Moore, we cannot say that Moore unjustly retained that benefit. When the house was sold, neither Moore nor Cimaglia received any proceeds.

6

And in fact, Moore paid more than $10,000 to facilitate closing. In retrospect it seems unfair that Cimaglia bore the bulk of the risk in the housing investment, but unjust enrichment is not an appropriate vehicle for recovery when there has been no return whatsoever on an investment. Cimaglia's claim for unjust enrichment therefore fails.

## B.

"An action for money lent is an action at law which lies whenever there has been a payment of money from the plaintiff to the defendant as a loan." 42 C.J.S. Implied Contracts § 2 (2010). A plaintiff making a claim for money lent must show "money was delivered to the defendant, the money was intended as a loan, and the loan has not been repaid." Id. There are very few Florida cases that address a claim for money lent. The district court cited to one unpublished case from the U.S. District Court for the Southern District of Florida, and neither Cimaglia nor Moore give us other examples of a court analyzing a money lent claim. However, the claim is included on a Florida Rules of Civil Procedure Form. Fla. R. Civ. P. Form 1.936 ("Defendant owes plaintiff $ …… that is due with interest since ….. (date) ….., for money lent by plaintiff to defendant on …… (date) …..). And a number of Florida lower courts have recognized the existence of the claim even if they don't analyze it in depth. See, e.g., Burt v. Hudson &

Keyse, LLC, 138 So. 3d 1193, 1194 (Fla. 5th DCA 2014); Sun Bank/Miami, N.A.

v. Saewitz, 579 So. 2d 255, 255 (Fla. 3d DCA 1991).

The district court found that Cimaglia failed to show the first two

requirements of a claim for money lent. First, the court determined that Cimaglia

didn't show "money was delivered to the defendant" because it was used as a

down payment on Cimaglia and Moore's jointly titled home. Second, the court

determined that Cimaglia did not provide sufficient evidence that the down

payment was intended as a loan because she executed a gift certification explicitly

designating $50,000 of the payment as a gift, and the only other evidence presented

was "after-the-fact e-mails years after the initial purchase."

Both of these determinations are at odds with the record before us. First,

there is a genuine dispute of material fact about whether money was delivered to

Moore. The mortgage to the Florida home was in Moore's name only, and as a

result, Cimaglia was not legally obligated to make payments toward the mortgage.

We are also unpersuaded by Moore's argument that Cimaglia's claim fails because

she paid the bank directly rather than first providing the funds for the down

payment to Moore. Cimaglia's payment of $120,000 of Moore's debt was a direct

benefit to him, even if it didn't pass through his bank account first.

Second, there is a genuine dispute of material fact as to whether the down

payment was intended as a loan. While the litany of emails from Moore do not

8

definitively establish that he accepted Cimaglia's payment as a loan, they certainly lend support to that theory. Although it is true, as Moore emphasizes, that the word "loan" does not appear in the emails, he repeatedly couches his payments in terms of "repayment," suggesting a prior obligation, rather than a gratuitous payment. Cimaglia's version of events is also supported by her sworn deposition testimony and the fact that Moore gave her $40,000 toward his "repayment."

While the Gift Certification places an additional barrier to Cimaglia's recovery of $50,000 of the loan, we find that a dispute of material fact exists as to whether that agreement was enforceable or alternatively supplanted by a different agreement with Moore. In support of this view, Cimaglia relies on Florida appellate court rulings that a gift certification letter did not conclusively establish that a money transfer was intended as a gift rather than a loan. See Smith v. Anderson, 821 So. 2d 323, 326–27 (Fla. 2d DCA 2002); cf. Monroe v. Appelton, 419 So. 2d 356 (Fla. 2d DCA 1982) (finding a writing describing a transfer as a loan did not conclusively establish that the transfer was intended as a loan rather than a gift). While these cases give only cursory analysis, they recognize that defenses may exist that prevent writings from being enforceable. And, for example, if Cimaglia and Moore reached a separate agreement not to honor the Gift Certification, or Moore implied that he would not rely on the Gift Certification, a reasonable jury could decide not to allow Moore to enforce that

9

agreement against Cimaglia.  We also find Moore's repeated reference in email to his intent to repay $120,000 rather than $70,000 supports an inference that the parties had come to a different agreement than that described in the Gift Certification.

Drawing all inferences in Cimaglia's favor, we find that she has made a claim for money lent for $80,000—the original $120,000 down payment less the $40,000 already repaid by Moore—sufficient to survive summary judgment.  We therefore affirm the district court's grant of summary judgment in favor of Moore on the unjust enrichment claim but reverse and remand for trial on the money lent claim.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART**